Miles D. LEE and Lee Clinic,
P.C., Plaintiffs,

v.

GRANDCOR MEDICAL SYSTEMS,
INC., and Versacor, Inc.,
Defendants.

Civ. A. No. 88–C–315.

United States District Court,
D. Colorado.

Dec. 13, 1988.

Donald F. Lozow and Kevin F. Hughes,
Lozow, Lozow & Hughes, Denver, Colo.,
for plaintiffs.

John R. Trigg and Kenneth A.B. Roberts, Jr., Hall & Evans, Denver, Colo., for defendants.

## ORDER

CARRIGAN, District Judge.

Plaintiffs Miles D. Lee and Lee Clinic, P.C. ("Lee Clinic") commenced this action by filing a complaint in the state district court for Weld County, Colorado, alleging state law claims for breach of contract, fraudulent inducement, and tortious interference with business relations. Defendants are Grandcor Medical Systems, Inc. ("Grandcor") and Versacor, Inc. ("Versacor"). Defendants have filed a verified petition for removal of the action to this court. Diversity jurisdiction is alleged to exist under 28 U.S.C. § 1332.

The complaint alleges the following facts: On August 16, 1983, the defendant Grandcor entered into a Transfer Agreement with Northern Colorado Osteopathic Hospital and Foundation, d/b/a Memorial Hospital. Pursuant to the Transfer Agreement, the defendants agreed to adequately staff and maintain Memorial Hospital, to promote and expand the practice of osteopathic medicine in Greeley, Colorado, and to operate Memorial Hospital so as to provide the plaintiffs with a hospital facility for the treatment of patients. Plaintiffs allege that they were intended third party beneficiaries of the Transfer Agreement.

The complaint further alleges that on September 26, 1983, the plaintiff Lee, and his predecessor in interest—the plaintiff Lee Clinic—entered into a Lease Management Services Agreement ("Management Agreement") with the defendant Versacor. Pursuant to this agreement, Versacor agreed to manage the physical plant of Lee Clinic.[1]

The complaint contains four claims for relief. The first asserts that the defendants breached the Management Agreement. The second claim alleges that the defendants breached the Transfer Agree-

ment. The third claim alleges that the defendants fraudulently induced the plaintiffs to execute the Management Agreement, and to consent to the Transfer Agreement, by falsely representing that Memorial Hospital and the Lee Clinic would be properly managed. The fourth claim alleges that the defendants intentionally operated the hospital and clinic in a manner intended to interfere with the relationships between and among the plaintiffs, their patients, and other physicians in the Greeley, Colorado area.

The fifth "claim for relief," is actually a prayer for exemplary damages rather than a separate claim, and it will be treated as such.

Currently pending is the defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(h)(3), Fed.R.Civ.P., for lack of subject matter jurisdiction. The parties have briefed the issues and oral argument would not materially assist my decision.

Defendants contend that valid and unwaived arbitration agreements in both the Management Agreement and the Transfer Agreement preclude this court's having subject matter jurisdiction until the plaintiffs' claims have been submitted to arbitration, and the arbitrator has rendered a decision.

Because this is a diversity case, state law must be applied to the substantive issues. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties apparently agree that Colorado law controls.

Under Colorado law, a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration. *See Guthrie v. Barda,* 188 Colo. 124, 533 P.2d 487 (1975).

Section 8.09 of the Management Agreement (p. 26) provides:

> sible for repairs and maintenance of the equipment, to manage the clinic's finances, and to promote the practice of osteopathic medicine in Northern Colorado.

---

1. According to the complaint, Versacor agreed to provide Lee and Lee Clinic with the equipment, inventory and supplies necessary to conduct a family medicine practice, to be respon-

"*Arbitration.* Any controversy or claim arising out of or relating to this Agreement, or the making, performance or interpretation thereof shall be settled by arbitration in accordance with the rules of the American Arbitration Association then existing, and judgment on such an arbitration award may be entered in any court having jurisdiction over the subject matter of the controversy. All arbitration proceedings shall only be held and conducted in Denver, Colorado. The party against whom an award is made shall be responsible for the costs of arbitration."

Paragraph 22 of the Transfer Agreement (p. 27) states as follows:

"*Arbitration.* Any disputes, differences or controversies arising under this Agreement shall be settled and finally determined by arbitration in Dayton, Ohio, or at such other location as the parties may agree in writing, according to the Rules of the American Arbitration Association in force at the time of such arbitration. The arbitrators shall make their award in accordance with, and based upon all the provisions of this Agreement and judgment upon any award rendered may be entered in any court having jurisdiction thereof."

Settlement of disputes through arbitration is strongly favored by Colorado courts. *See, e.g., Red Carpet Armory Realty Company v. Golden West Realty*, 644 P.2d 93, 94 (Colo.App.1982).

Section 13–22–203, Colo.Rev.Stat., provides, in relevant part:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist in law or equity for the revocation of any contract."

Significantly, where, as here, a party does not contest the validity of the arbitration clause itself, the phrase "save upon such grounds as exist in law or equity for the revocation of any contract" does not preclude arbitration of the claim that the underlying contract was induced by fraud. *National Camera, Inc. v. Love*, 644 P.2d 94 (Colo.App.1982).

Plaintiffs respond to the defendants' motion by arguing that: (1) the defendants have waived any rights they had under the arbitration provisions; (2) even if the defendants did not waive their rights under the arbitration clauses, the plaintiffs cannot be bound by the Transfer Agreement because they were not signatories to that agreement; and (3) even if the arbitration provisions are enforceable with respect to the plaintiffs' claims for the breach of contract, they do not apply to the plaintiffs' tort law claims. I shall consider the plaintiffs' arguments in the order just presented.

### A. Waiver of Arbitration Right.

■ Plaintiffs first contend that under Rule 8(c), Fed.R.Civ.P., the defendants were required to assert the existence of the arbitration clauses as an affirmative defense in their answer.

Rule 8(c) provides, in relevant part:

"Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk. . . ."

Clearly, Rule 8(c) is limited to the situation where a dispute already has been arbitrated and an award has been obtained. Neither has occurred in this case.

■ Plaintiffs next assert that by petitioning for removal, filing an answer, and requesting a jury trial, the defendants waived any rights they may have under the arbitration clauses. Specifically, the plaintiffs state:

"[H]ad the Defendants intended to invoke an alleged right to arbitration, they would have filed the appropriate Motion to Compel with the District Court in Weld County, Colorado. To the contrary, the Defendants instead petitioned for removal of the action, answered and requested a jury trial. Such actions are not consistent with an intent to arbitrate and as such, constitute a waiver of any

right to arbitrate." (Opposition brief, at 3.)

"Waiver of the right to arbitration is not to be lightly inferred. Unless one's conduct has gained him an undue advantage or resulted in prejudice to another, he should not be held to have relinquished the right." *Vespe Contracting Co. v. Anvan Corp.*, 399 F.Supp. 516, 522 (E.D.Pa.1975); *see also Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) ("[t]he burden on one seeking to prove a waiver of arbitration is a heavy one").

The cases cited by the plaintiffs in their opposition brief do not support the plaintiffs' contention that by filing a petition for removal, answering a complaint, and requesting a jury trial, a party waives its right to arbitration. To the contrary, courts generally have held that rights under an arbitration agreement are only waived where the parties have engaged in extensive pre-trial discovery, and where the party opposing the arbitration will suffer material prejudice as the result of the other party's delay in asserting its rights to arbitration. *See, e.g., McDonnell v. Dean Witter Reynolds, Inc.*, 620 F.Supp. 152, 159 (D.Conn.1985) ("only when delay prejudices the opposing party will delay be sufficient to constitute a waiver").

Plaintiffs have not alleged, much less demonstrated, that they have been materially prejudiced by any delay caused by the defendants' petitioning for removal, filing an answer, and requesting a jury trial. This case was commenced recently and no substantive proceedings have occurred. No trial date has been set, and no motions, other than the defendants' motion to dismiss, are currently pending. Discovery has not commenced. Accordingly, I conclude that the defendants have not waived their rights under the arbitration clauses.

### B. Plaintiffs Not Signatories to Transfer Agreement.

■ Plaintiffs assert that even if they are bound by the arbitration provision in the Management Agreement, they cannot be bound by the arbitration clause in the Transfer Agreement because as third party beneficiaries, they were not signatories to that agreement.

Plaintiff's argument lacks merit. A third party beneficiary must accept a contract's burdens along with its benefits. Moreover, a party may be bound by an arbitration agreement to which it has not expressly agreed. *Zdeb v. Shearson Lehman Bros.*, 674 F.Supp. 812 (D. Colo.1987); *see also Manes Org, Inc. v. Standard Dyeing and Finishing Co.*, 472 F.Supp. 687 (S.D.N.Y.1979) (arbitration clause need not be signed or subscribed to by the parties).

### C. Applicability of Arbitration Clauses to Tort Claims.

Plaintiffs argue that even if the arbitration clauses deprive this court of subject matter jurisdiction over their claims for breach of contract, the arbitration clauses do not cover their claims for fraudulent inducement and tortious interference with business relations. I shall consider the two arbitration provisions separately.

#### 1. Management Agreement.

■ Under § 8.09 of the Management Agreement (p. 26), "[a]ny controversy or claim arising out of or relating to this Agreement, *or the making, performance* or interpretation thereof shall be settled by arbitration...." (Emphasis added.)

Plaintiffs' claim for fraudulent inducement asserts that they executed the Management Agreement based on the defendants' fraudulent representations concerning the management services that would be provided to the Lee Clinic. Clearly this claim for relief arises out of and relates to the "making" of the Management Agreement. I therefore conclude that the arbitration clause of the Management Agreement applies to the plaintiffs' claim for fraudulent inducement.

I similarly concude that the plaintiff's claim for tortious interference with business relations is covered by the Management Agreement's arbitration clause. Plaintiffs claim that:

"During its management of Memorial Hospital and the Lee Clinic pursuant to the Transfer Agreement and the

Management Agreement, the Defendants intentionally operated both facilities in a manner intended to interfere with the relationship between Dr. Miles and the Lee Clinic, their patients and other practicing physicians in the Greeley, Colorado area, for the purpose of causing Dr. Lee to remove himself from the Lee Clinic and Memorial Hospital so as to allow Defendants complete control of the facilities." (Complaint ¶ 25)

Clearly, the plaintiffs' claims for tortious interference is related to the "performance" of the Management Agreement.

### 2. Transfer Agreement.

 Paragraph 22 of the Transfer Agreement (p. 27) provides that "[a]ny disputes, differences or controversies *arising under this Agreement* shall be settled and finally determined by arbitration...." (Emphasis added.)

Unlike the language used in the arbitration clause of the Management Agreement, the above-quoted language of the Transfer Agreement does not expressly refer to disputes related to the "making" or "performance" of the underlying agreement. Nevertheless, the language appears to cover the plaintiffs' claims for fraudulent inducement and tortious interference with business relations because both claims appear to "arise under" the Transfer Agreement. Importantly, "doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration." *Stateside Machinery Co. v. Alperin,* 591 F.2d 234, 240 (3rd Cir.1979); *see also Sharon Steel Corp. v. Jewell Coal and Coke Co.,* 735 F.2d 775 (3rd Cir.1984).

Furthermore, courts applying federal law have held that a general arbitration clause covers a claim that the plaintiff was fraudulently induced to enter into the underlying agreement. *See, e.g., Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967) ("where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud"); *Willis v. Shearson/American Express, Inc.,* 569 F.Supp. 821, 824 (M.D.N.C.1983) (arbitration clause covered claim for fraudulent inducement).

In sum, I conclude that the arbitration clauses in both the Management Agreement and the Transfer Agreement apply to all of the plaintiffs' claims for relief. Therefore, subject matter jurisdiction is lacking over the plaintiffs' claims at this time.

Accordingly, IT IS ORDERED that:

(1) Defendants' motion to dismiss for lack of subject matter jurisdiction is granted; and

(2) The complaint and this action are dismissed without prejudice.