661 So.2d 849 (1995)
Carmen and George BOMBALIER, individually and as Personal Representatives of the Estate of Christian Bombalier, Appellants,
v.
LIFEMARK HOSPITAL OF FLORIDA, d/b/a Palmetto General Hospital, Appellee.
No. 94-2960.
District Court of Appeal of Florida, Third District.
September 6, 1995.
*850 Keith Chasin, Miami, for appellants.
Parenti, Falk, Waas & Frazier and Gail Leverett Parenti, Coral Gables, for appellee.
Before HUBBART, LEVY and GODERICH, JJ.

Corrected Opinion
PER CURIAM.
On motion for clarification, the previous opinion of this court filed May 10, 1995, is vacated and withdrawn, and the corrected opinion is substituted.
*851 The plaintiffs, Carmen and George Bombalier, appeal from a non-final order denying their entitlement to arbitration. We reverse.
The Bombaliers allege that on May 9, 1993, Carmen Bombalier, who was about twenty-five weeks pregnant with twins, was negligently treated at Palmetto General Hospital [Palmetto] and that such negligence caused her to give birth two days later to a stillborn fetus (Twin A) and to a baby boy (Twin B), Christian, who died two weeks later. On January 3, 1994, the Bombaliers mailed a notice of intent to initiate litigation for medical malpractice to Palmetto. The notice of intent identified the claimants as "Carmen and George Bombalier, and the Estates of Twins A & B, and their survivors." On April 21, 1994, at the close of the ninety-day presuit screening process, Palmetto mailed the Bombaliers a letter offering to admit liability as to both claims and to arbitrate the issue of damages pursuant to sections 766.106(3)(b)(3) and 766.207, Florida Statutes (1993).
The Bombaliers responded to Palmetto's offer by agreeing to submit Carmen's claim for personal injury and George's derivative claim for loss of consortium to voluntary binding arbitration. However, as personal representatives for Christian's estate, they rejected Palmetto's offer to arbitrate the wrongful death claim.
Subsequently, Palmetto filed a petition seeking declaratory relief alleging that the Bombaliers' response, whose terms were different than those contained in Palmetto's offer, constituted a rejection of the offer to arbitrate. The Bombaliers answered the petition urging the court to declare that Carmen's claim for personal injury and George's derivative claim for loss of consortium were separate and distinct from that of Christian's estate for wrongful death, thereby allowing them to respond separately to the offer to arbitrate. Both the Bombaliers and Palmetto filed motions for summary judgment.
After a hearing, the court entered an order that read, in pertinent part, as follows:
4. The Court finds that the Bombaliers' response to Palmetto General's offer to arbitrate constituted a rejection of the hospital's offer because the purported "acceptance" was on different terms than the offer. Under these circumstances, there is no binding agreement to arbitrate.
... .
6. Under the presuit screening statutes, the claimants have the option of determining the number of claims and/or claimants to be joined in a single notice of intent to initiate medical malpractice litigation. Fla. Stat. § 766.106(2) (1993). Pursuant to section 766.207(7)(k), Florida Statutes (1993), the hospital was statutorily required to extend any offer to arbitrate to all claimants who had joined the notice of intent to initiate medical malpractice litigation, and it did so.
7. Under these circumstances, the Court holds where a single incident of medical malpractice gives rise to multiple claims, and such claimants elect to join their claims in a single notice of intent, they may not thereafter attempt to separate their claims for the purposes of responding to an offer to arbitrate made pursuant to section 766.206, Florida Statutes (1993).
8. The Court further finds as a matter of law, that this case involves one "incident" of malpractice, despite the fact that such incident may have generated multiple claims, i.e., a wrongful death claim and a bodily injury claim... . The Bombaliers' claims are subject to the $350,000 "per incident" cap on non-economic damages contained in section 766.209(4)(a), Florida Statutes (1993).
9. Based on the foregoing, the Court finds that Palmetto General Hospital is entitled to summary final judgment in its favor on its Petition for Declaratory Decree, and the Court declares as follows:
10. The Bombaliers' response constituted a rejection of the offer to arbitrate; therefore, the parties shall not proceed to arbitration pursuant to section 766.207, Florida Statutes (1993), but shall proceed to litigate all issues involving the Bombaliers' claims, including liability, in Circuit Court.
11. The damages recoverable at trial shall be limited to net economic damages, *852 plus noneconomic damages not to exceed $350,000 for all claims since the Bombaliers' claims arose out of one "incident" of alleged malpractice, even though the incident gave rise to separate claims. Fla. Stat. § 766.209(4)(a).
The Bombaliers appeal from this order contending that the trial court erred by ruling that the parties shall not proceed to arbitration, but rather, to trial. We agree.
It is an established principle that where the language of a statute is clear and unambiguous and conveys a clear and definite meaning, courts should not resort to rules of statutory interpretation and construction. The statute must be given its plain and obvious meaning. Construction of a statute which would lead to an absurd result should be avoided.
Winter v. Playa del Sol, Inc., 353 So.2d 598, 599 (Fla. 4th DCA 1977) (citations omitted).
Section 766.207(7)(k), Florida Statutes (1993), reads, in pertinent part, as follows: "Any offer by a defendant to arbitrate must be made to each claimant who has joined in the notice of intent to initiate litigation... . A claimant who rejects a defendant's offer to arbitrate shall be subject to the provisions of s. 766.209(4)." (emphasis added). This section of the malpractice statute indicates that any offer to arbitrate by the defendant must be made to "each claimant," meaning each individual claimant, who has joined in the notice of intent to initiate litigation. Additionally, "a claimant," meaning a single claimant, who rejects a defendant's offer to arbitrate, is limited in the amount of damages he or she may recover at trial by statute.
Similarly, section 766.209(4)(a), Florida Statutes (1993), provides that, "If the claimant rejects a defendant's offer to enter voluntary binding arbitration: The damages awardable at trial shall be limited to net economic damages, plus noneconomic damages not to exceed $350,000 per incident." Again, this section refers to "the claimant," meaning a single claimant, and indicates that a claimant who rejects the offer to arbitrate is limited to $350,000 in net economic damages and noneconomic damages for his or her incident of malpractice.
We find that the statutes discussed above are clear and unambiguous and that the trial court erred by going beyond the plain and obvious meaning of the statutes. We agree with the trial court that a claimant has the option of deciding whether or not to join his or her claims with the claims of others in a single notice of intent. However, we find no language in the statute that indicates that such joinder should limit a claimant's ability to accept or reject a defendant's offer to arbitrate on an individual basis. In fact, the statute plainly states that "a claimant" may reject a defendant's offer to arbitrate.
Palmetto alleges that such a literal reading of the statute will produce absurd results that are contrary to the legislative intent of the medical malpractice statute. Palmetto argues that this literal reading will not promote arbitration nor the prompt resolution of medical negligence claims, but rather that, in a situation like this one, where one spouse has a claim for personal injury and the other spouse has a claim for loss of consortium, the defendant would be obligated to make an individual offer to arbitrate to each spouse. We agree that the defendant would be obligated to make an offer to arbitrate to each spouse, but we disagree that this would create an absurd result.
In this type of situation, the spouse, who has a cause of action for loss of consortium, has a claim that is derivative of the injured spouse's claim for personal injury. Gates v. Foley, 247 So.2d 40, 45 (Fla. 1971); Sanchez v. Martin, 416 So.2d 15, 16 (Fla. 3d DCA 1982). The loss of consortium claim is derivative because it is founded on the relationship between a husband and a wife. Sanchez, 416 So.2d at 16. The spouse with the loss of consortium claim has an interest in the litigation only in privity, thus if the injured spouse's claim is defeated, the derivative claim of the other spouse for loss of consortium also falls. Sanchez, 416 So.2d at 16. Thus, we find that because the spouse with the loss of consortium claim has an interest in the litigation only in privity, both spouses would be required to either accept arbitration or reject arbitration. To do otherwise would allow inconsistent outcomes.
*853 In contrast, we find that Carmen's cause of action for personal injury is a separate and distinct claim from that of Christian's estate for his wrongful death. Carmen has a cause of action for personal injury stemming from the stillborn fetus, as living tissue of her body, McGeehan v. Parke-Davis, 573 So.2d 376, 377 (Fla. 2d DCA 1991); Singleton v. Ranz, 534 So.2d 847, 848 (Fla. 5th DCA 1988), review denied, 542 So.2d 1334 (Fla. 1989); while, George and Carmen, as personal representatives of Christian's estate, also have a statutory cause of action for his wrongful death. §§ 768.16-.31, Fla. Stat. (1993). We find that although it was the identical tortious acts that caused Carmen's personal injury and Christian's death, such acts gave rise to two separate and distinct claims. Bowie v. Reynolds, 161 So.2d 882 (Fla. 1st DCA 1964).
We find that the Bombaliers properly responded to Palmetto's offer to arbitrate by agreeing to submit Carmen's claim for personal injury and George's derivative claim for loss of consortium to voluntary binding arbitration while, simultaneously rejecting, as personal representatives of Christian's estate, Palmetto's offer to arbitrate his wrongful death claim. The trial court erred by deeming the Bombaliers "purported" acceptance a rejection and by entering summary judgment in favor of Palmetto.
We reverse and remand for further proceedings consistent with this opinion.