727 So.2d 2 (1998)
GEORGIA POWER COMPANY and Jerry Ledbetter
v.
Jerry PARTIN and Brenda Partin.
1961192.
Supreme Court of Alabama.
September 4, 1998.
Rehearing Denied December 11, 1998.
*3 Vernon L. Wells II and Emily Sides Bonds of Walston, Wells, Anderson & Bains, Birmingham, for appellants.
*4 Mark A. Stephens, Deborah Alley Smith, and Rhonda Pitts Chambers of Rives & Peterson, P.C., Birmingham, for appellees.
LYONS, Justice.
Georgia Power Company and Jerry Ledbetter, defendants in an action pending in the Colbert Circuit Court, appeal from an order denying their motions to compel arbitration and to stay proceedings pending arbitration of the claims brought by the plaintiffs Jerry Partin and his wife Brenda Partin. We reverse and remand.

I.
On October 7, 1991, Jerry Partin suffered an injury in the course of his employment as a maintenance foreman for Orba Corporation. On that day, Partin was occupied with loading coal at the Pride Transloading Facility ("Pride Facility"), which was owned by Georgia Power Company and operated by Orba Corporation. He was injured when he fell from a catwalk on the end of a slowly moving railcar owned and operated by Norfolk Southern Railway Company.
At the time of Partin's injury, Orba Corporation maintained the Pride Facility pursuant to a written "operations agreement" with Georgia Power. Among other things, the operations agreement required Georgia Power to construct and equip the Pride Facility and made Georgia Power responsible for any defects or deficiencies in the construction or maintenance of the facility. The operations agreement specified the duties of each party and it was signed by agents for Georgia Power and Orba Corporation. It contained an arbitration clause, which provided, in pertinent part:
"In the event of any dispute, difference of opinion or controversy between the parties as to any question of fact which may arise under this Agreement and in the event of any failure or inability of the parties to arrive at a mutual agreement with respect to matters provided to be mutually agreed upon between the parties herein, either party shall have the right to request arbitration by giving written notice thereof to the other party."
Jerry Partin sued Georgia Power, Norfolk Southern, and his Georgia Power supervisor, Jerry Ledbetter, alleging that the defendants had negligently or wantonly failed to provide him with a safe workplace. In his claim against Georgia Power, Partin specifically alleged that Georgia Power had been negligent or wanton in failing to correct unsafe work procedures, in maintaining the Pride Facility, in failing to provide adequate lighting at the facility, and in failing to construct a crosswalk over the trains. Jerry Partin's wife, Brenda, joined his action, seeking damages for loss of consortium.
Over three years later, and after the case had been set for trial, the Partins moved to amend their complaint to add an additional claim against Georgia Power alleging a breach of the operations agreement between Georgia Power and Orba Corporation. The amended complaint alleged that the operations agreement established a master-servant relationship between Georgia Power and Orba Corporation; that the operations agreement provided specifications for the maintenance of the Pride Facility; that Georgia Power had failed to meet those specifications; and that Georgia Power's failure resulted in injury to Jerry Partin. The Partins specifically alleged that Jerry Partin was "a third-party beneficiary of said contract, and [that] the breach of said contract ... by Georgia Power Company was a direct and proximate cause of [his] injuries and damages as described in the original [complaint]."
The trial court granted the Partins' motion to amend and, 12 days later, Georgia Power and Ledbetter moved to compel arbitration of all claims and to stay proceedings pending arbitration of the claims, pursuant to the arbitration clause contained within the operations agreement between Georgia Power and Orba Corporation. The defendants argued that, although the Partins were not signatories to the agreement containing the arbitration provision, their claims were nevertheless arbitrable because Jerry Partin claimed to be a third-party beneficiary of the agreement.
The Partins argued to the trial court that the arbitration clause could not be enforced against Jerry Partin because he was not a signatory to the agreement between Georgia *5 Power and Orba Corporation. They further argued that the defendants had waived any right to enforce the arbitration agreement against Jerry Partin by delaying over three years before moving to compel arbitration. They also argued that the arbitration agreement was not enforceable against Brenda Partin in regard to her loss-of-consortium claim and that Jerry Ledbetter had no standing to enforce the arbitration clause because he was not a signatory to the contract. The trial court denied the arbitration motions, without stating its reasons for doing so. Georgia Power and Ledbetter appeal.

II.
Under the Federal Arbitration Act, 9 U.S.C. § 2 et. seq., ("FAA"), a "written arbitration provision" is enforceable if it appears in a "contract evidencing a transaction involving [interstate] commerce." The parties do not dispute that Georgia Power and Orba Corporation entered into a valid arbitration agreement, nor do they dispute that the arbitration agreement appeared in a contract evidencing a transaction involving interstate commerce.
Both federal and state courts have consistently recognized that the duty to arbitrate is a contractual obligation and that a party cannot be required to arbitrate any dispute that he or she has not agreed to submit to arbitration. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala.1990). Because arbitration is a creature of contract, ordinary contract principles govern the interpretation of an agreement to arbitrate. Ex parte Jones, 686 So.2d 1166 (Ala.1996). It is a well-established principle of Alabama law that a contract made for the benefit of a third person may, at his election, be accepted and enforced by him. Michie v. Bradshaw, 227 Ala. 302, 149 So. 809 (1933). However, "[i]f he claims the benefits [of the contract], he also assumes the burdens." Michie, 227 Ala. at 308, 149 So. at 814. See, also, Ex parte Dyess, 709 So.2d 447 (Ala.1997) (non-signatory plaintiff claiming the benefit of a contract as a third-party beneficiary is subject to arbitration agreement within that contract). "The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. `The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.'" Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd., 635 F.Supp. 1503, 1505 (S.D.Fla.1985), quoting Trans-Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370, 378 (D.C.Cir.1976). See, also, Dunn Constr. Co. v. Sugar Beach Condominium Ass'n, Inc., 760 F.Supp. 1479 (S.D.Ala. 1991); Lee v. Grandcor Medical Systems, Inc., 702 F.Supp. 252, 255 (D.Colo.1988) ("A third party beneficiary must accept a contract's burdens along with its benefits."). It is thus clear that a third-party beneficiary cannot accept the benefit of a contract, while avoiding the burdens or limitations of that contract. Jerry Partin brought his breach-of-contract claim as a third-party beneficiary of the operations agreement between Orba Corporation and Georgia Power, and, thus, has chosen to accept and enforce all of its terms, including the arbitration clause that he seeks to avoid.
Jerry Partin argues that, even if the arbitration clause applies to his breach-of-contract claim, it does not apply to his negligence claims against Georgia Power. He points out that the arbitration clause in the operations agreement provides that arbitration would apply "[i]n the event of any dispute, difference of opinion or controversy between the parties as to any question of fact which may arise under this Agreement," if either party requested arbitration. (Emphasis added.) He contends that this language makes the arbitration clause enforceable only as to disputes that are strictly contractual; however, in his brief to the trial court in support of his motion to amend the complaint, he admitted that "[t]he contract establishes certain elements of control by the defendant Georgia Power Company which create a master-servant relationship giving rise to its duty to the plaintiff and that "the contract in this case goes to he very heart of the merits of the action."
In order for a dispute to be characterized as arising out of the subject matter of *6 a contract, for the purposes of arbitration, it must at the very least raise some issue that cannot be resolved without a reference to, or a construction of, the contract itself. Koullas v. Ramsey, 683 So.2d 415 (Ala.1996). It is clear that Jerry Partin's complaint alleging negligence, although initially expressed in ignorance of the contractual relationship, was later amended to assert a claim alleging the breach of certain duties that he alleges were owed to him by Georgia Power, and it is clear that these duties are alleged to have arisen from Georgia Power's operations contract with Orba Corporation. Because both the contract claims and the tort claims, after the amendment of the complaint, involve questions of fact as to Georgia Power's duties to Jerry Partin arising from the operations agreement, we agree that both kinds of claims are included within the scope of the arbitration agreement in that contract.
Georgia Power and Ledbetter next argue that the trial court erred in failing to grant their motion to compel arbitration of Jerry Partin's claims against Ledbetter, who was not a signatory to the operations agreement. At the time of the accident, Ledbetter was employed by Southern Company Services as Georgia Power's representative at the Pride Facility, and his presence at the Pride Facility was sanctioned by § 3.2(m) of the operations contract.[1] Jerry Partin's claims against Ledbetter are based solely on Ledbetter's alleged acts of negligence and/or wantonness as an agent of Georgia Power. Jerry Partin alleges that Ledbetter, as an agent for Georgia Power, controlled Jerry Partin's work methods and the conditions he worked in, so that Ledbetter's alleged failure to provide adequate lighting at the Pride Facility on the night of Jerry Partin's accident proximately caused his injury.
This Court has established that a party may not avoid an arbitration agreement merely by suing a nonsignatory employee of a principal. Ex parte Gray, 686 So.2d 250 (Ala.1996). Jerry Partin is clearly suing Ledbetter in his capacity as a Georgia Power agent, based upon the alleged breach of certain duties he says were created by the operations agreement. Because he is essentially suing Georgia Power through his claims against Ledbetter, we agree that Ledbetter is entitled to the benefit of the contract signed by Georgia Power and may enforce its arbitration provision.

III.
Georgia Power and Ledbetter next argue that the trial court erred in denying their motions to compel arbitration of Brenda Partin's loss-of-consortium claim. We have not previously considered whether a loss-of-consortium claim brought by a nonsignatory spouse must be arbitrated along with the claims of an injured spouse. We have held that although a loss-of-consortium claim is derivative of the claims of an injured spouse, Ex parte N.P., 676 So.2d 928 (Ala.1996), it is also a separate claim that is distinct from the claims of the injured spouse, Mattison v. Kirk, 497 So.2d 120, 123 (Ala.1986) ("The wife's right of recovery depends only upon a showing of liability on the part of [the] third-party [d]efendants. To make her case, she simply must prove that her husband's injury was caused by [the defendants'] wrongful acts and that, as a result, she lost her husband's consortium from the time of the injury...."). Brenda Partin alleges that her husband Jerry Partin was injured as a result of the same alleged breach of duties that Jerry Partin bases his personal-injury claims upon. Although her claim is for damages separate from his, it nevertheless springs from the same source, i.e., the operations contract, which the Partins admit goes to the very heart of this action.
Some jurisdictions that have addressed the issue of the arbitrability of a nonsignatory spouse's loss-of-consortium claim have determined that merely because a loss-of-consortium claim is derivative, it must be arbitrated along with the injured spouse's claims. See Bombalier v. Lifemark Hosp. of Florida, 661 So.2d 849 (Fla.Dist.Ct.App.1995), review denied, 666 So.2d 901 (Fla.1996) (spouse who has derivative claim for loss of consortium *7 has interest in litigation only in privity to the husband's claims, so that her claims must be arbitrated if her husband's claims are deemed arbitrable); Jozwiak v. Northern Michigan Hospitals, Inc., 207 Mich.App. 161, 524 N.W.2d 250 (1994) (like a spouse's claim for loss of consortium, a child's independent action for the loss of society and companionship of an injured parent is derivative and must be arbitrated along with the parent's claims).
However, we are more persuaded by the reasoning in A.L. Williams & Associates, Inc. v. McMahon, 697 F.Supp. 488 (N.D.Ga. 1988), where the United States District Court for the Northern District of Georgia held that an insurance agent's spouse, who was a nonsignatory to the agent's agreements with an insurer, could not assert a loss-of-consortium claims arising out of those agreements without abiding by the arbitration clauses contained therein. The court stated that "a party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then [repudiate] it when it works to its disadvantage." Id., at 494. Thus, the court concluded, the agent's spouse could not assert claims allegedly arising out of the agreements executed by her husband, without being required, herself, to abide by the arbitration clauses in those agreements. Id.
Although Brenda Partin's loss-of-consortium claim is separate from her husband's, she alleges that her injury was caused by the same breach of duties that her husband says resulted in his injury. As we have discussed, the Partins themselves concede in their pleadings that the existence and scope of these duties are based upon the terms of the operations agreement between Georgia Power and Orba Corporation. We therefore agree that, because Brenda Partin's claims are based upon the contract, her claims are subject to the arbitration clause contained therein.

IV.
Having determined that the Partins' claims against Georgia Power and Ledbetter are subject to the arbitration agreement in the operations contract, we must address whether Georgia Power waived its right to compel arbitration by failing to do so until over three years after the litigation began. The Partins originally alleged tort claims only, based on Jerry Partin's personal injury; there was no claim based upon the operations agreement and no allegation that Jerry Partin was a third-party beneficiary of that agreement. Georgia Power argues that it did not have standing to compel arbitration pursuant to the operations agreement until the Partins amended their complaint to add a breach-of-contract claim based upon Jerry Partin's alleged status as a third-party beneficiary of that contract. Georgia Power moved to compel arbitration 12 days after the Partins amended their complaint.
A court will not find a waiver of the right to arbitration unless the party seeking arbitration has so substantially invoked the litigation process that to compel arbitration will substantially prejudice the party opposing it. Ex parte Phelps, 672 So.2d 790 (Ala.1995). A party's participating in discovery at a time before the claim becomes arbitrable is not a factor to be considered in determining whether a waiver has occurred, Ex parte McKinney, 515 So.2d 693 (Ala. 1987). The law does not require the futile gesture of asking for arbitration before a claim becomes arbitrable; any delay in seeking arbitration should be measured from the time the claim becomes arbitrable. Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1026 (11th Cir.1982), overruled on other grounds, Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The evidence shows that Georgia Power promptly moved to compel arbitration after the Partins' amended complaint made their claims subject to the arbitration clause in the operations agreement; therefore, the substantial litigation that had preceded the filing of the amended complaint is not a proper basis for finding a waiver in this case.[2]
*8 Based upon the foregoing, we hold that the trial court erred in denying the defendants' motions to compel arbitration of the Partins' claims and to stay proceedings pending arbitration. The circuit court's order denying the motions is reversed and the cause is remanded for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur.
ALMON, SHORES, KENNEDY, and COOK, JJ., dissent.
SHORES, Justice (dissenting).
Under the holding in this case, the plaintiffs could have avoided arbitration by not amending their complaint to state a contract claim. I agree with this conclusion. However, it does not follow that the act of amending to state the contract claim makes the plaintiffs' noncontract claims also subject to arbitration. If, as the majority says, the contract goes to the "very heart" of the matter upon which the original complaint was based, 727 So.2d at 5, then Georgia Power waived its right to compel arbitration as to the noncontract claims by engaging in the litigation process for three years. Ex parte Phelps, 672 So.2d 790 (Ala.1995).
Georgia Power and Jerry Ledbetter (Jerry Partin's supervisor) substantially participated in the discovery process (15 depositions were taken) and sought judicial intervention by moving for a summary judgment. To move for a summary judgment is to substantially participate in litigation, and it clearly indicates an intention to abandon the right to arbitrate. Ex parte Prendergast, 678 So.2d 778 (Ala.1996). The defendant's participating in the litigation process for three years amounts to an enforceable waiver of the right to arbitrate the noncontract claims, and it supports the trial court's denial of the defendants' motions to compel arbitration. Companion Life Insurance Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995).
ALMON and KENNEDY, JJ., concur.
NOTES
[1] Section 3.2(m) of the contract requires Orba Corporation to provide office space and incidental office services to "one representative of Georgia Power"; it is undisputed that Ledbetter was the representative referred to in this provision.
[2] Although the dissent refers to the Partins' "contract claim," 727 So.2d at 8, we emphasize that the Partins' amended complaint was based on Jerry Partin's claim that he was a third-party beneficiary of the contract between Orba Corporation and Georgia Power. The Partins' original complaint asserted claims independent of the contract. Before Partin asserted his third-party beneficiary claim, Georgia Power and Ledbetter had no legal basis upon which they could have enforced the arbitration agreement, which appeared in a contract to which the Partins were not parties. Therefore, Georgia Power and Ledbetter could not waive their right to arbitrate the Partins' noncontract claims by participating in the litigation process as to those claims, until after the Partins, for the first time, affirmatively availed themselves of the benefits of the contract. Cf. Benoay v. Prudential-Bache Securities, Inc., 805 F.2d 1437 (11th Cir.1986) (even though defendants did not move to compel arbitration for over two years after commencement of civil action, they could not have obtained an order compelling arbitration until after the United States Supreme Court changed the law to require arbitration of pendent arbitrable claims even if arbitrable and nonarbitrable claims were intertwined; therefore, they did not waive their right to arbitrate, and their motion to compel, filed 10 weeks after their right to arbitrate accrued, was timely). Once the Partins amended their complaint, the tort claims they had originally asserted became intertwined with the contract claims, so that all of their claims now are subject to arbitration.