Medical Services, LLC, appeals from an order of the trial court compelling it to arbitrate its claims against two architects, Michael Waldheim and Warren Watkins, and GMW 
Company, Inc. ("GMW"), in these actions involving the renovation of a building. In case no. 1041753, we affirm; in case no. 1041762, we affirm in part, reverse in part, and remand.
 Facts and Procedural History
These cases arise out of a contract to renovate a building. In 2003, Medical Services hired Waldheim to evaluate a possible site for use as an ophthalmological-services facility. Medical Services alleges that, based on Waldheim's representations, Medical Services entered into a construction contract with GMW, a construction firm apparently owned by Waldheim, to renovate a building selected by Waldheim for use as the ophthalmological-services facility. During the construction project, Watkins was employed by GMW in some capacity that is unclear.
The contract consists of a "Standard Form of Agreement Between Owner and Contractor," which incorporates by reference a document entitled "General Conditions of the Contract for Construction" ("the general-conditions document"). The Standard Form of Agreement names GMW as the "contractor," Medical Services as the "owner" of the subject property, and Waldheim as the project "architect."[1] The general-conditions document contained an arbitration provision, which stated in pertinent part: "Any Claim[2] *Page 160 
arising out of or related to the Contract . . . shall . . . be subject to arbitration. . . ." The general-conditions document also contained the following limitation on arbitration:
 "4.6.4 Limitation on Consolidation or Joinder. No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. . . ."
During the renovation of the building, a number of disputes arose between GMW and Medical Services concerning GMW's work and the actions of Waldheim and Watkins relating to the renovation. Effective September 24, 2004, Medical Services terminated the contract with GMW and retained another contractor to finish the project.
On September 28, 2004, GMW sued Medical Services and its secretary/treasurer, Ralph Levene; its president, Elmar Lawaczeck; SouthTrust Bank, which held a mortgage on the property; and several fictitiously named defendants. The trial court assigned this action case no. CV-04-5779.
GMW alleged in its complaint that it complied with all of its duties under the contract that were not excused or made impossible by Medical Services and that it performed additional work valued at $250,000, for which it had not been paid. GMW further alleged that Levene and Lawaczeck induced GMW to do additional work without paying for that work. GMW thus sought damages for breach of contract; work and labor performed; intentional interference with business relations; fraudulent inducement, misrepresentation, and suppression; unjust enrichment; and damages under the Prompt Payment Act of Ala. Code 1975, § 8-29-1 et seq. Furthermore, GMW sought the imposition and enforcement of a lien[3] it had filed on the building being renovated. The complaint also stated that GMW intended to compel arbitration pursuant to the arbitration provision in the general-conditions document.[4]
On November 5, 2004, Medical Services filed an answer and a counterclaim against GMW. The counterclaim alleged that GMW breached the contract by failing to properly renovate the building through numerous deficiencies and failures in both planning and construction. Medical Services thus sought damages for negligence, wantonness, and breach of contract.
On October 15, 2004, before filing its answer and counterclaim in case no. CV-04-5779, Medical Services filed a separate action against Waldheim and Watkins. Medical Services alleged that the two negligently and wantonly performed architectural services, breached warranties to Medical Services, violated the standard of care required of architects, failed to represent the interests of Medical Services, and failed to properly administer the construction contract between Medical Services and GMW. Medical Services thus sought *Page 161 
damages against Waldheim and Watkins for negligence and wantonness in the renovation project, fraud and suppression regarding representations concerning both the condition of the building and the feasibility and cost of the renovation, falsely representing the completion percentage of the project to induce premature installment payments, and misrepresenting the condition of the building's roof. Finally, Medical Services sought damages against Waldheim and Watkins for breach of various warranties. The trial court assigned this action case no. CV-04-6204.
GMW ultimately moved the trial court to consolidate the two cases and to compel arbitration of all the claims. Apparently, GMW also initiated arbitration proceedings at this time.
On August 5, 2005, the trial court held a hearing on the motion.[5] In an order signed by the trial court and filed in open court on August 8, 2005, the trial court consolidated the two cases and ordered all the parties to submit their claims to arbitration. The trial court then stayed any arbitration proceedings between GMW and Medical Services pending appellate review.[6] Medical Services filed a notice of appeal in both cases.[7]
 Standard of Review "`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo
determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999). Furthermore:
 "`A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'
 "Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (emphasis omitted))."
Vann v. First Cmty. Credit Corp., 834 So.2d 751,752-53 (Ala. 2002).
 Discussion
In the trial court, GMW produced a contract calling for arbitration and produced evidence demonstrating that the transaction that is the basis of the contract affected interstate commerce.[8] Thus, the burden shifted to Medical Services to present evidence showing that the arbitration provision in the contract does not apply to the dispute in question. Vann, supra. *Page 162 
The sole issue raised by Medical Services on appeal is whether paragraph 4.6.4 of the general-conditions document, "Limitation on Consolidation or Joinder," prohibits the arbitration of any claims against the party defined in the Standard Form of Agreement as the architect — Waldheim — and the architect's employee — allegedly Watkins.
Medical Services contends that because the arbitration provision in this case specifically excludes the parties from including the "architect" and the architect's employees in any arbitration proceeding, the trial court erred in ordering Medical Services to arbitrate its claims against Waldheim and Watkins. Waldheim and Watkins argue, on the other hand, that they are employees and agents of GMW, and that nonsignatory agents may rely on arbitration agreements signed by their principal, so long as the plaintiff's claims are based on the agent's actions within the line and scope of his agency. See, e.g., Stevens v. Phillips, 852 So.2d 123, 128-31 (Ala. 2002); McDougle v. Silvernell, 738 So.2d 806 (Ala. 1999); Georgia Power Co. v. Partin, 727 So.2d 2, 6
(Ala. 1998); and Ex parte Gray, 686 So.2d 250
(Ala. 1996). They also maintain that Medical Services is equitably estopped from arguing that the arbitration provision does not apply.
First, we note that the Standard Form of Agreement specifically names Waldheim as the "architect." The definition of "architect" found in section 4.1.1 of the general-conditions document includes the architect's "authorized representative," and paragraph 4.6.4 of the general-conditions document prohibits the arbitration of claims against both the architect and the "Architect's employees or consultants." Medical Services argues that Watkins provided architectural services; however, there is no evidence in the record indicating that Watkins was Waldheim's "authorized representative" or his employee or consultant. See Providian Nat'l Bank v.Conner, 898 So.2d 714, 719 (Ala. 2004) (holding that statements in motions and briefs are not evidence to be considered in ruling on a motion to compel arbitration). Therefore, Medical Services did not meet its burden in establishing that the arbitration provision does not apply to Watkins.
"`Agreements to arbitrate are essentially creatures of contract,' and ordinary contract rules govern the interpretation of arbitration provisions." OrkinExterminating Co. v. Larkin, 857 So.2d 97, 103 (Ala. 2003) (quoting Blount Int'l, Ltd. v. James River-Pennington,Inc., 618 So.2d 1344, 1346 (Ala. 1993)). "When interpreting a contract, a court should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of the agreement clearly state."Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112
(Ala. 2000). Additionally, this Court will interpret the terms of a contract to give "effect to all terms used." Sullivan,Long Hagerty v. Southern Elec. Generating Co.,667 So.2d 722, 725 (Ala. 1995). See also Board of Water Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co.,870 So.2d 699, 710 (Ala. 2003) ("The law is settled that this Court is bound to construe contracts so as to give meaning to all provisions whenever possible.").
The duty to arbitrate is a contractual obligation, and "a party cannot be required to arbitrate any dispute that he or she has not agreed to submit to arbitration." Partin,727 So.2d at 5. Moreover, the parties to a contract containing an arbitration agreement generally have the power in drafting the contract to place limits on an arbitrator's authority or even, in some cases, to wholly exclude certain claims from arbitration. H.L. Fuller Constr. Co. v. Industrial Dev. Bd.of Vincent, *Page 163 590 So.2d 218, 222 (Ala. 1991) ("parties to a contract containing an arbitration agreement certainly have the power to limit the arbitrator's authority to consider certain claims"); McKeev. Hendrix, 816 So.2d 30, 34 (Ala.Civ.App. 2001) ("Parties may, through clear and express exclusions in the contract containing the arbitration provision, exclude from arbitration certain claims or disputes between the parties.").
This Court has previously enforced a virtually identical limitation on joining an architect in the arbitration of a dispute under a similar contract. See Ex parte Stallings Sons, Inc., 670 So.2d 861 (Ala. 1995). InStallings Sons, a contractor, Stallings, was involved in the construction of an addition to a hospital. SS A, an architectural firm, was hired to design the project and to assist in overseeing its construction. Stallings later sued SS A, alleging that SS A had been derelict in fulfilling its duties, causing Stallings to suffer economic losses.
SS A moved to compel arbitration based on an arbitration provision in Stallings's contract with the owner of the hospital. Although SS A was not a party to the contract between Stallings and the hospital, SS A argued that Stallings was equitably estopped from refusing to arbitrate because the basis of Stallings's claim was that SS A had breached the duties and responsibilities assigned to it through the contract.
This Court refused to hold that Stallings was equitably estopped from refusing to arbitrate because, in part, the contract contained the following restriction on arbitration: "`No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Architect . . ., except by written consent. . . .'" 670 So.2d at 863. This Court upheld the plain terms of the contract and reversed the trial court's order compelling the architect to arbitrate:
 "This Court will not adopt the doctrine of equitable estoppel in actions against architects when the contract between the owner and the contractor contains the language [preventing the joinder of the architect in arbitration], and there is no written consent containing a specific reference to an agreement signed by the architect, owner, and contractor."
670 So.2d at 863.
The contract in the instant case is clear: the architect — Waldheim — may not be a party in any arbitration arising out of or relating to the contract except by the written consent of the architect, the owner, the contractor, and any other person or entity sought to be joined in the arbitration proceeding. No such consent appears in the record. Giving effect to the plain terms of the contract, the arbitration provision in this case, as did the provision inStallings Sons, forbids the joinder of Waldheim in arbitration.
GMW, however, argues that Medical Services' complaint essentially alleges claims for damages resulting from Waldheim's duties as an employee of GMW, and not his duties as the "architect." Waldheim likewise contends that the claims against him are in his capacity as an employee of GMW, and not as the "architect," and are thus not subject to the restriction that the architect may not be taken to arbitration. Medical Services, on the other hand, argues that the complaint clearly seeks damages for actions Waldheim performed in his capacity as the architect.
Several allegations in the complaint assert claims against Waldheim in his capacity as the architect or allege that he failed to perform the duties of the architect as described in the contract. For example, paragraph 4.2.1 of the general-conditions *Page 164 
document provides that the architect will administer the contract and act as the owner's representative. The complaint alleges that Waldheim failed to administer the contract properly, impartially, and in good faith, and that he failed to represent the interests of Medical Services. Additionally, paragraph 4.2.5 of the general-conditions document provides that the architect will evaluate GMW's applications for payment and certify any amounts due. The complaint alleges that Waldheim failed in this duty by preparing defective payment applications and submitting them to Medical Services. Finally, paragraph 4.4 of the general-conditions document provides that the architect is to resolve disputes between the contractor and the owner. The complaint alleges that numerous disputes arose between GMW and Medical Services and that Waldheim "failed to perform [his] duties as [a] design professional to address and resolve the disputed issues" and that Waldheim failed to act impartially.
To the extent the complaint seeks damages against Waldheim in his capacity as the "architect," those claims are specifically excluded from arbitration. However, to the extent the claims alleged against Waldheim are essentially claims against GMW or against him as an employee of GMW, those claims must be submitted to arbitration. See Partin, 727 So.2d at 6
("a party may not avoid an arbitration agreement merely by suing a nonsignatory employee of a principal"). We believe a determination of which claims should or should not be submitted to arbitration would be better made by the trial court on remand.[9] This decision may result in some of the claims in this case being resolved in trial and some in arbitration; however, this is the result required by the contract the parties have entered into. See Moses H. Cone Mem'l Hosp. v. MercuryConstr. Corp., 460 U.S. 1, 19-21, 103 S.Ct. 927,74 L.Ed.2d 765 (1983) (noting in an action involving a construction dispute between a hospital, a contractor, and an architect, that some of the claims could not be resolved in arbitration, which could result in the parties' being forced to resolve related disputes in different forums: "That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." (footnote omitted)). See also Dean WitterReynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238,84 L.Ed.2d 158 (1985) ("[T]he [Federal] Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); Ex parteScrushy, 940 So.2d 290, 296 (Ala. 2006) ("concepts of judicial economy are secondary to the strong federal policy favoring arbitration").
 Conclusion
The trial court's order compelling the arbitration of GMW's claims against Medical Services and Medical Services' claims against GMW and Watkins is affirmed. We reverse the portion of the trial court's order compelling arbitration of Medical Services' claims against Waldheim to the *Page 165 
extent those claims allege a cause of action against him in his capacity as the "architect," and we remand these consolidated cases.
1041753 — AFFIRMED.
1041762 — AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NABERS, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
[1] Waldheim, who is the president of GMW, signed the contract on GMW's behalf.
[2] Section 4.3.1 of the general-conditions document defines "claim" as "a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term `Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. . . ."
[3] GMW had previously filed a verified claim of lien in the Jefferson County Probate Court.
[4] The complaint stated that GMW wished to submit its claims to arbitration; GMW states in its brief that it filed a complaint in order to perfect its statutory lien.
[5] The transcript of this hearing, if it was transcribed, was not included in the record.
[6] The trial court noted that the issue whether the claims of Medical Services against Waldheim and Watkins are subject to arbitration may have been proper for appellate review.
[7] This Court assigned the appeal in GMW's action against Medical Services (CV-04-5779) case no. 1041753. The appeal in Medical Services' action against Waldheim and Watkins (CV-04-6204) was assigned case no. 1041762.
[8] Whether the evidence was sufficient to demonstrate that the transaction affected interstate commerce is not an issue in these appeals.
[9] We note that services that can be described as "architectural" are not necessarily exclusively the duties of the architect under the contract. Paragraph 8.1.7(3) of the Standard Form of Agreement provides that the "scope of work" to be performed by GMW includes "Professional Architectural . . . services as required." Thus, a determination of whether the complaint alleges a claim against the architect or GMW must be made with specific reference to the description of duties of both found in the contract.