699 So.2d 1017 (1997)
ST. MARY'S HOSPITAL, INC., and Women's Health Services, Inc., Appellants,
v.
Charles PHILLIPE, as Personal Representative of Juslin Phillipe, deceased, and all survivors of Juslin Phillipe, Appellee.
Nos. 96-2321, 96-2971 and 96-3320.
District Court of Appeal of Florida, Fourth District.
July 30, 1997.
Rehearing Denied October 22, 1997.
Order Denying Rehearing and Certification Question October 22, 1997.
*1018 Joseph H. Lowe of Winitz, Minkin & Lowe, Miami, for appellants.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., and Theodore Babbitt and Joseph R. Johnson of Babbitt and Johnson, P.A., West Palm Beach, for appellee.
Kristy C. Brown of Fisher, Rushmer, Werrenrath, Wack & Dickson, P.A., Orlando, for amicus curiae Florida Defense Lawyers Association.
Neil H. Butler of Butler & Long, and William A. Bell, Tallahassee, for amici curiae The Florida Hospital Association, Inc. and the Association of Voluntary Hospitals of Florida, Inc.
Claudia B. Greenberg of Grossman and Roth, P.A., for amicus curiae Academy of Florida Trial Lawyers.
FARMER, Judge.
These consolidated appeals present unsettled questions relating to voluntary arbitration under the Medical Malpractice Act and the statutory limits on claims for non-economic damages. We must first, however, take up the equally unsettled issue as to the defendants' right under the Medical Malpractice Act to a stay pending review of the arbitration award.

*1019 I. Stay Pending Review

Since the entry of the medical malpractice arbitration award, the defendants have made multiple attempts to obtain a stay pending appellate review of the judgment on the award. First, they filed a motion for stay pending review in this court pursuant to section 766.212(2), which allows the district court to stay an arbitration award entered pursuant to section 766.207 but only to prevent manifest injustice. See §§ 766.207 and 766.212(2), Fla. Stat. (1995). A motion panel of this court denied the motion. Upon the circuit court's entry of the final judgment ratifying the arbitration award, defendants posted a supersedeas bond in the lower court under rule 9.310.[1] In response to this filing, claimants filed a motion for contempt and for directions to the sheriff to levy execution. The circuit court denied a stay of execution, directing the sheriff to levy on defendants' assets.
In reviewing the claimed error from the denial of the stay, we turn first to section 766.212.[2] Defendants contend that this statute, especially subsection (2), infringes on the supreme court's exclusive authority to prescribe rules of procedure for the appellate courts. The court has prescribed a procedure for stays pending review in rule 9.310, which affords an unfettered right to a stay of a money judgment upon furnishing a good and sufficient supersedeas bond. Accordingly, they argue, section 766.212(2) is unconstitutional to the extent that it abrogates the automatic stay provision of rule 9.310. We disagree.
As we read the text of this statute, the legislature has created a modified right to judicial review of arbitration awards under chapter 766. This limited review includes an equally substantive right to payment of the award during review unless the court finds that a stay is necessary to prevent manifest injustice. Defendants have the burden of showing us some "manifest injustice" if a stay were denied. Their only showing was that they would have to pay the arbitration award now, even though they might later prevail on this appeal. We conclude that defendants have failed to show that a stay is necessary to prevent manifest injustice.
According to the text of subsection (1) of section 766.212, the stay is reviewed by an appellate court in the same manner as a final *1020 order from an administrative agency under section 120.68. Stays from final administrative action are not uniformly granted as a matter of substantive right by the legislature. In subsection (3) of section 120.68, for example, the legislature has provided:
"(3) The filing of a notice or petition does not stay enforcement of the agency decision. The agency may grant a stay upon appropriate terms, but a petition to the agency for a stay is not a prerequisite to a petition to the court for supersedeas. Subject to the Florida Rules of Appellate Procedure, no stay or supersedeas shall be in effect until the party seeking relief files a petition for stay and the agency or court enters an order granting such relief. The order shall specify the conditions, if any, upon which the stay or supersedeas is granted. Where the agency decision has the effect of suspending or revoking a license, a stay shall be granted as a matter of right upon such conditions as are reasonable, unless the agency demonstrates that a stay would constitute a probable danger to the public health, safety, or welfare."
The only instance where the legislature has created a substantive right to a stay pending review of final agency action is where the agency order has the effect of suspending or revoking a license. So it is clear that in section 120.68 the legislature has considered the question of which agency orders should be subject to a stay as of right, and has just as clearly provided in section 766.212 that no such right should be given.
Moreover, as the supreme court itself noted in University of Miami v. Echarte, 618 So.2d 189 (Fla.), cert. denied, 510 U.S. 915, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993), prompt payment of an award in medical malpractice arbitration is one of the trade-offs for claimants who give up their right to a trial by jury and agree to arbitration. We cannot say that such substantive legislation infringes on the supreme court's power to regulate procedures in appellate proceedings. Consequently we find section 766.212 constitutional but certify the question of constitutionality to the supreme court for its definitive resolution.[3]

II. Non-Economic Damages
We now to turn to the principal issue raised in this appeal, whether the statutory limit on non-economic damages in a medical malpractice arbitration applies in the aggregate to all claimants or whether each claimant is limited to the statutory amount. To begin to analyze this problem, it is necessary first to set the stage.
This medical malpractice action arose from the death of Juslin Phillipe, who died while giving birth to her daughter, Ecclesianne Phillipe.[4] Because of the death of the patient, the Wrongful Death Act requires that the action be brought by the personal representative of her estate. That happens to be her surviving husband, who in turn has claims on behalf of himself and her four surviving children. The written agreement to arbitrate pursuant to section 766.201, Florida Statutes, states that:
"The following parties have consented to the subject arbitration:
CHARLES PHILLIPE, Individually and as statutory survivor and as Personal Representative of the Estate of JUSLIN PHILLIPE, deceased, and all statutory survivors of JUSLIN PHILLIPE, deceased." [emphasis supplied]
After hearing the evidence and arguments of the parties, the arbitrators awarded separate amounts of non-economic damages. The surviving husband and Ecclesianne each received $250,000; the three other children each received $175,000. The arbitrators then awarded $2,284,804 for lost support and services to the family, and $943,000 for lost services for the special care of the baby, in economic damages. They also awarded *1021 $3,398 in funeral expenses. In awarding attorney's fees, the arbitrators awarded separate sums for each claimant: $153,750 for non-economic damages; $252,244 for economic damages to the family; $104,128 for economic damages to the baby; and $509.70 for funeral expenses. The economic damages were made payable in equal yearly installments for 10 years, but were not reduced to present value. The circuit court entered a final judgment ratifying and confirming this award, and this appeal followed in due course.

A. Standard of Review
As a preliminary matter, we are asked to address the standard of review applicable to voluntary binding arbitration awards pursuant to chapter 766. We first note that there are two different sets of statutes providing for arbitration of medical malpractice claims. Under section 766.106, a defendant's insurer may make an offer of admission of liability and for arbitration on the issue of damages. Section 766.106(12) provides that: "To the extent not inconsistent with this part, the provisions of chapter 682, the Florida Arbitration Code, shall be applicable to such proceedings." On the other hand, the parties may elect to submit the issue of damages to an arbitration panel in accordance with section 766.207, and review of the award will be in accordance with section 766.212. Unlike section 766.106, section 766.207 does not contain a provision applying the arbitration code in chapter 682. In this case, arbitration was clearly initiated by the parties themselves under section 766.207. Therefore, our review of this case should follow section 766.212.
We again refer to section 766.212(1). It provides that an arbitration award is final agency action for purposes of section 120.68 and that an appeal shall be limited to a review of the record and otherwise proceed in accord with section 120.68. Section 120.68, Florida Statutes (1995), which is a part of the Administrative Procedures Act, empowered the reviewing court as follows:
"(8) The court shall remand the case for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure....
"(9) If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall: (a) set aside or modify the agency action, or (b) remand the case to the agency for further action under a correct interpretation of the provision of law.
"(10) If the agency's action depends on any fact found by the agency in a proceeding meeting the requirements of s. 120.57, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record."[5]
Defendants argue that under section 766.212 the applicable standard of review for this arbitration is that set forth in section 120.68.
Claimants argue that the appropriate standard of review was stated in our decision in Mogler v. Franzen, 669 So.2d 269 (Fla. 4th DCA 1995), and in University of Miami v. Echarte, 618 So.2d 189 (Fla.), cert. denied, 510 U.S. 915, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). In Mogler, a dispute arose during arbitration as to the types of damages recoverable in a medical malpractice arbitration, and the defendant thereupon filed a declaratory judgment action in the circuit court to settle that legal issue. 669 So.2d at 270.[6] The claimants moved to dismiss the declaratory relief action, arguing that the trial court lacked jurisdiction to consider the issue after the parties had submitted it to arbitration. The trial court found that it had jurisdiction, and entered an order finding that the damages *1022 sought by plaintiffs were not recoverable. We reversed the court's determination as to jurisdiction, stating:
"The parties agreed to determine damages in voluntary binding arbitration. By agreeing to binding arbitration, the parties gave the arbitrators sole authority to determine their recoverable damages and waived the right to challenge the arbitrator's award of damages, even if the arbitrators made an error of law. [c.o.] Therefore, the trial court lacked jurisdiction to entertain this declaratory relief action."
669 So.2d at 271. We then issued another opinion on defendant's motion for rehearing, stating:
"Appellees also raise, for the first time, the argument that because an arbitration award under the Medical Malpractice Act is subject to judicial review pursuant to sections 766.212(1) and 120.68, Florida Statutes (1993), declaratory relief should be available prior to the arbitration award. We disagree."
669 So.2d at 271. Rather than addressing the issue we face today, Mogler simply holds that declaratory judgment relief is not available in the circumstances presented, i.e. before the arbitrators render a final decision.
In Echarte, the claimants argued that the medical malpractice statutes have the effect of limiting the amount of non-economic damages they may recover for the provider's neglect. The arbitration provision replaces their common law remedy of all damages proximately flowing from the neglect, they argued, and it is constitutional only if plaintiffs receive something commensurate in its place. Thus, the supreme court confronted the issue of the constitutionality of the very provisions we face today. The court expressly upheld the statutory scheme against an attack that the arbitration provision was an insufficient substitute for the common law right of an ordinary damages action. In so doing, the court explained:
"The initial question in the instant case is whether the arbitration statutes, which include the non-economic damage caps found in sections 766.207 and 766.209, provide claimants with a `commensurate benefit' for the loss of the right to fully recover non-economic damages. Sections 766.207 and 766.209 only limit a claimant's right to recover non-economic damages after a defendant agrees to submit the claimant's action to arbitration. The defendant's offer to have damages determined by an arbitration panel provides the claimant with the opportunity to receive prompt recovery without the risk and uncertainty of litigation or having to prove fault in a civil trial. A defendant or the defendant's insurer is required to conduct an investigation to determine the defendant's liability within ninety days of receiving the claimant's notice to initiate a malpractice claim. § 766.106(3)(a). Before the defendant may deny the claimant's reasonable grounds for finding medical negligence, the defendant must provide a verified written medical expert opinion corroborating a lack of reasonable grounds to show a negligent injury. § 766.203(3)(b). The claimant benefits from the requirement that a defendant quickly determine the merit of any defenses and the extent of its liability. The claimant also saves the costs of attorney and expert witness fees which would be required to prove liability. Further, a claimant who accepts a defendant's offer to have damages determined by an arbitration panel receives the additional benefits of: 1) the relaxed evidentiary standard for arbitration proceedings as set out by section 120.58, Florida Statutes (1989); 2) joint and several liability of multiple defendants in arbitration; 3) prompt payment of damages after the determination by the arbitration panel; 4) interest penalties against the defendant for failure to promptly pay the arbitration award; and 5) limited appellate review of the arbitration award requiring a showing of `manifest injustice.'" [emphasis supplied]
618 So.2d at 194. According to claimants, this highlighted portion of the Echarte opinion places severe limits on the kind of review may give to an arbitration award under section 766.207.
We note that the "manifest injustice" standard for judicial review of general arbitration awards originated in Cassara v. Wofford, 55 So.2d 102 (Fla.1951), where the court said:
"[T]he award of arbitrators in statutory arbitration proceedings cannot be set aside *1023 for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment, andhowever disappointing it may bethe parties must abide by it....' The Court should interpose in this class of cases with great caution; and never, except in a case of urgent necessity, to prevent the consummation of a fraud, or some great manifest wrong and injustice.'" [c.o.]
55 So.2d at 105-06. But the kind of standard for judicial review of generic arbitration awards used in Cassara can be varied by the legislature in special arbitration statutes of the kind involved here. This is, after all, substantive legislation where the powers of the legislature are plenary, subject only to constitutional limitations and the burden of clarity. In Echarte the court settled the constitutional question, and it did not hold or even suggest that the specific statutory provision providing for a hybrid form of judicial review of malpractice arbitration awards was deficient.
Section 766.212(1) states the kind of review permitted for these awards in voluntary arbitration. Claimants argue, and we agree, that under this provision our review of these awards is limited to the amount, the allocation of financial responsibility together with the evidence in support of the amount and the allocation, and the procedures followed. These are the only matters we may consider. The review sought in this case centers primarily around the first of these, namely the amount of the awards.
The primary contention of the defendant providers is that under this review we are given authority to review the nature and types of the awards and determine whether the arbitrators followed the correct law. In short, they contend that the Medical Malpractice Act limits non-economic damages to specified amounts for any act of medical negligence, irrespective of the number of claimants, and the arbitrators here misapplied this law and awarded non-economic damages in excess of the legal limit. Then, they argue, even assuming there is evidence to support the amount of these damage awards and that the proper procedure was followed by the arbitrators, the court must still set aside the awards because of legal error in the types and amount of damages awarded.
We agree with the defendants' reading of section 766.212(1) as to the standard of review. In this statutory text, the legislature has created a hybrid form of limited review of malpractice arbitration awards under section 766.207(2). Unlike arbitrations under chapter 682 in which judicial review is the narrowest possible, see J.J.F. of Palm Beach, Inc. v. State Farm Fire and Casualty Co., 634 So.2d 1089 (Fla. 4th DCA 1994), this statute allows slightly more review. In reviewing the amount of damages, we are not limitedas claimants contendto determining solely whether there is substantial competent evidence to support the amount awarded and whether the proper procedure was followed by the arbitrators. Because this was an arbitration under section 766.207 in which subsection (2)(b) expressly limits awards of non-economic damages to $250,000 per incident, we conclude that the legislature intended for the court to review whether the amount of damages exceeds the statutory limits. In other words, the power to review the amount necessarily comprehends whether the amount exceeds the limit. We therefore pass on to that question.

B. The Statutory Limit
We begin this analysis, of course, with the pertinent statutory text of section 766.207:
"(7) Arbitration pursuant to this section shall preclude recourse to any other remedy by the claimant against any participating defendant, and shall be undertaken with the understanding that:
(a) Net economic damages shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments.
(b) Non-economic damages shall be limited to a maximum of $250,000 per incident, and shall be calculated on a percentage basis with respect to capacity to enjoy life, so that a finding that the claimant's injuries resulted in a 50-percent reduction in his capacity to enjoy *1024 life would warrant an award of not more than $125,000 noneconomic damages.

. . . . .
(k) Any offer by a claimant to arbitrate must be made to each defendant against whom the claimant has made a claim. Any offer by a defendant to arbitrate must be made to each claimant who has joined in the notice of intent to initiate litigation, as provided in s. 766.106. A defendant who rejects a claimant's offer to arbitrate shall be subject to the provisions of s. 766.209(3). A claimant who rejects a defendant's offer to arbitrate shall be subject to the provisions of s. 766.209(4)....
The provisions of this subsection shall not preclude settlement at any time by mutual agreement of the parties." [emphasis supplied]
We have highlighted a number of provisions to indicate what we perceive is statutory emphasis on both the limit per incident and the relationship, if any, of the term "claimant" to that limit.
Claimants' argument is that the statute is framed in overall reference to "the claimant," so that the statutory locution "per incident" must be read in that context. On the other hand, defendants contend that per incident clearly means "per incident of malpractice," and applies so as to limit non-economic damages to $250,000 no matter how many claimants there are. Defendants also point out that claimant is defined in the definitional provisions in section 766.202 as "any person who has a cause of action arising from medical negligence" and that for purposes of a wrongful death action there is only one claimant, the personal representative of the deceased's estate.
This statute was construed in Bombalier v. Lifemark Hosp. of Florida, 661 So.2d 849 (Fla. 3d DCA 1995), rev. denied, 666 So.2d 901 (Fla.1996), where a woman who was pregnant with twins was negligently treated at the hospital and gave birth to one stillborn fetus and a son who died two weeks later. Only one notice of intent to initiate litigation was sent to defendant, and it identified the claimants as the mother, her husband with his derivative claim for loss of consortium, and the estates of the twins and their survivors. The hospital offered to admit liability and arbitrate the issue of damages, which the parents accepted for their individual claims but rejected on behalf of the estates of the twins. The hospital then filed a declaratory judgment action, alleging that the bifurcated response to the offer to arbitrate constituted a rejection. The hospital argued that both claims were subject to the one offer to arbitrate and that the response thus varied materially from the offer. 661 So.2d at 851. The trial court agreed, based in part on the language at issue in this case.
The district court reversed, saying:
"In this type of situation, the spouse, who has a cause of action for loss of consortium, has a claim that is derivative of the injured spouse's claim for personal injury. The loss of consortium claim is derivative because it is founded on the relationship between a husband and a wife. The spouse with the loss of consortium claim has an interest in the litigation only in privity, thus if the injured spouse's claim is defeated, the derivative claim of the other spouse for loss of consortium also falls. Thus, we find that because the spouse with the loss of consortium claim has an interest in the litigation only in privity, both spouses would be required to either accept arbitration or reject arbitration. To do otherwise would allow inconsistent outcomes.
"In contrast, we find that [the mother's] cause of action for personal injury is a separate and distinct claim from that of [the child's] estate for his wrongful death. [The mother] has a cause of action for personal injury stemming from the stillborn fetus, ... while, [the mother and father] as personal representatives of [their son's] estate, also have a statutory cause of action for his wrongful death. We find that although it was the identical tortious acts that caused [the mother's] personal injury and [the son's] death, such acts gave rise to two separate and distinct claims." [c.o.]
661 So.2d at 852-853. Two things are clear about Bombalier. One, it did not consider the non-economic damage limit issue we face today. Two, the effect of the third district's construction of the statute is to find that the *1025 term claimant embraces more than the patient who directly experienced the departure from the standard of care by the health care provider.
The question we face today, however, is whether the statutory text will bear the construction placed on it by the arbitrators in this case. We do not believe that it will. To quote it again, the pertinent text is: "[n]oneconomic damages shall be limited to a maximum of $250,000 per incident ...." [emphasis supplied] It is a fundamental rule of statutory construction that if the text is clear, the court may not resort to construction. Palm Beach Community College Foundation Inc. v. WFTV Inc., 611 So.2d 588 (Fla. 4th DCA 1993). We must also read a statutory text to give effect to the plain meaning of its words. Palm Beach County Health Care Dist. v. Everglades Mem. Hosp. Inc., 658 So.2d 577 (Fla. 4th DCA 1995). Both sides agree that this text is clear, even if they do read it differently.
Claimants' argument seeks to add the words per claimant to modify the term per incident. But adding the words per claimant at this point in the statutory text is little more than an extension of the universe built by the legislature. As the supreme court made clear in Holly v. Auld, 450 So.2d 217 (Fla.1984),
"courts of this state are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power."
450 So.2d at 219. Hence, using only the text given us by the legislaturehowever many individual claimants there may be from a single incident of malpractice on a patient there is only one incident of malpractice in this case. It follows that there can be no more than $250,000 in non-economic damages awarded by the arbitrators under section 766.207, no matter how many different people may have a direct benefit in the award, or the source of their entitlement to share in the award. If $250,000 is too little for multiple beneficiaries of the nominal claimant, their remedy is not to agree to arbitration. After all, section 766.207 does not require anyone to agree to arbitration.

III. Other Issues
We now turn to the remaining issues. First, we find no error in the arbitrators awarding economic damages paid over a period of 10 years rather than the life expectancy of the decedent. Defendants' argument would require us to read into the statutes a requirement that the number of payments coincide with the life expectancy of the victim. Section 766.207(7)(c) provides that
"[d]amages for future economic losses shall be awarded to be paid by periodic payments pursuant to s. 766.202(8) and shall be offset by future collateral source payments."
The definitional provisions of the Medical Malpractice Act, namely section 766.202(8)(c), provide that:
"(8) `Periodic payment' means provision for the structuring of future economic damages payments, in whole or in part, over a period of time, as follows ... (c) The provision for payment of future damages by periodic payments shall specify the recipient or recipients of the payments, the dollar amounts of the payments, the interval between payments, and the number of payments or the period of time over which payments shall be made."
Additionally, rule 60Q-3.024(4),[7] provides as follows:
"In addition, unless waived by the parties, the arbitration award shall, as to each claimant who proves future economic damages, specify sufficient periodic payments to compensate the claimant for future economic damages, after offset for collateral sources, by setting the dollar amounts of the payments, the interval between payments, and the date of the final payment." [emphasis supplied]
We construe the plain meaning of these statutes and the rule[8] to leave to the arbitrators what the appropriate period should be for the payment of economic damages.
Defendants also complain that the arbitrators awarded economic damages not *1026 permitted by the Wrongful Death Act, specifically lost earning capacity of the decedent. The problem with this argument is that the claim for economic damages in this arbitration is controlled by the Medical Malpractice Act, and not by the Wrongful Death Act. At least two provisions of the Medical Malpractice Act authorize an award for lost earning capacity. See §§ 766.202(3) ("`Economic damages' means financial losses which would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity.") and 766.207(7)(a) ("Arbitration pursuant to this section shall preclude recourse to any other remedy by the claimant against any participating defendant, and shall be undertaken with the understanding that ... [n]et economic damages shall be awardable, including ... loss of earning capacity, offset by any collateral source payments."). We thus find no error in the award of lost earning capacity.
We find competent substantial evidence to support the award of attorney's fees. Defendants' argument for error here is linked to their argument on the 10-year payout of economic damages, which we have affirmed, so we find no error.
Finally, we find no error in the circuit court entering judgment on the arbitration award notwithstanding the filing of this appeal. As we stated earlier, one of the critical aspects of this legislation which led to the supreme court decision in Echarte to uphold the Act against constitutional attack was the provision for prompt payment of the arbitration award and the corresponding provision limiting any stay pending review. It was entirely proper for the court to promptly enter judgment.

IV. Conclusion
On the issue of the limit on non-economic damages, we reverse and remand to reduce the non-economic damages to $250,000, the statutory limit, for the incident of malpractice as to all claimants in the aggregate. Finding no error in any of the other issues raised, we affirm as to them.
GUNTHER, J., and MAY, MELANIE G., Associate Judge, concur.

On Motions for Rehearing
PER CURIAM.
We deny the motions for rehearing and rehearing en banc. We grant the motion for certification, however, to give the supreme court the opportunity to consider the same question we have today certified in Franzen v. Mogler, ___ So.2d ___, 1997 WL 656303, Case No. 96-2356 (Fla. 4th DCA October 22, 1997), namely:
When the alleged medical negligence results in the death of the patient, does the cap on non-economic damages of $250,000 per incident in a voluntary arbitration under § 766.207 apply to each beneficiary under the Wrongful Death Act, or does the $250,000 cap apply in the aggregate to include all Wrongful Death Act beneficiaries?
GUNTHER and FARMER, JJ., and MAY, MELANIE G., Associate Judge, concur.
NOTES
[1] See Fla.R.App.P. 9.310 ["(b) Exceptions. (1) Money Judgments. If the order is a judgment solely for the payment of money, a party may obtain an automatic stay of execution pending review, without the necessity of a motion or order, by posting a good and sufficient bond equal to the principal amount of the judgment plus twice the statutory rate of interest on judgments on the total amount on which the party has an obligation to pay interest. Multiple parties having common liability may file a single bond satisfying the above criteria."].
[2] See § 766.212, Fla. Stat. (1995), which provides that:

"766.212. Appeal of arbitration awards and allocations of financial responsibility
"(1) An arbitration award and an allocation of financial responsibility are final agency action for purposes of s. 120.68. Any appeal shall be taken to the district court of appeal for the district in which the arbitration took place, shall be limited to review of the record, and shall otherwise proceed in accordance with s. 120.68. The amount of an arbitration award or an order allocating financial responsibility, the evidence in support of either, and the procedure by which either is determined are subject to judicial scrutiny only in a proceeding instituted pursuant to this subsection.
"(2) No appeal shall operate to stay an arbitration award; nor shall any arbitration panel, arbitration panel member, or circuit court stay an arbitration award. The district court of appeal may order a stay to prevent manifest injustice, but no court shall abrogate the provisions of s. 766.211(2).
"(3) Any party to an arbitration proceeding may enforce an arbitration award or an allocation of financial responsibility by filing a petition in the circuit court for the circuit in which the arbitration took place. A petition may not be granted unless the time for appeal has expired. If an appeal has been taken, a petition may not be granted with respect to an arbitration award or an allocation of financial responsibility that has been stayed.
"(4) If the petitioner establishes the authenticity of the arbitration award or of the allocation of financial responsibility, shows that the time for appeal has expired, and demonstrates that no stay is in place, the court shall enter such orders and judgments as are required to carry out the terms of the arbitration award or allocation of financial responsibility. Such orders are enforceable by the contempt powers of the court; and execution will issue, upon the request of a party, for such judgments."
[3] With respect to the order directing the sheriff to levy on defendants' assets, the issue is whether the trial court can enter such an order once a bond has been posted under Florida Rule of Appellate Procedure 9.310. As thus stated, this issue is simply an indirect attack on section 766.212's limited form of stay, which we have resolved as just indicated.
[4] Ecclesianne was born severely brain damaged, but her independent personal injury claim was not submitted to arbitration.
[5] These provisions were substantially rewritten by the legislature in 1996. See Ch. 96-159, Laws of Fla.
[6] Although our opinion did not specify the basis for the arbitration occurring in Mogler, it was instituted under section 766.207, as in this case.
[7] See Fla. Adm.Code Rule 60Q-3.024(4).
[8] Defendants have not challenged the validity of this rule, or the authority of the agency to promulgate it.