769 So.2d 961 (2000)
ST. MARY'S HOSPITAL, INC., et al., Petitioners,
v.
Charles PHILLIPE, etc., Respondent.
Charles Phillipe, etc., Petitioner,
v.
St. Mary's Hospital, Inc., et al., Respondents.
Dirk Franzen, M.D. et al., Petitioners,
v.
Henry E. Mogler et al., Respondents.
Henry E. Mogler et al., Petitioners,
v.
Dirk Franzen, M.D. et al., Respondents.
Nos. SC91895, SC91896, SC91894 and SC91934.
Supreme Court of Florida.
June 29, 2000.
Rehearing Denied October 19, 2000.
*962 Joseph H. Lowe of Winitz, Minkin & Lowe, Miami, Florida, for St. Mary's Hospital, Inc.
Theodore Babbitt and Joseph R. Johnson of Babbitt and Johnson, P.A., West Palm Beach, Florida; and Jane Kreusler-Walsh, West Palm Beach, Florida, for Charles Phillipe, etc.
Claudia B. Greenberg of Grossman and Roth, P.A., Miami, Florida, for Florida Academy of Trial Lawyers, Amicus Curiae.
Kristy c. Brown of Fisher, Rushmer, Werrenrath, Wack & Dickson, P.A., Orlando, Florida, and Fail Leverett Parenti, Falk & Waas, P.A., Coral Gables, Florida, for Florida Defense Lawyers Association, Amicus Curiae.
Bobo, Spicer, Ciotoli, Fulford, Bocchino, Debevoise & Le Clainche, West Palm Beach, Florida; and Ralph Anderson and Ila J. Klion of Hicks & Anderson, Miami, Florida, for Dirk Franzen, M.D. et al.
Lake Lytal, Jr. and Joe Reiter of Lytal, Reiter, Clark Fountain & Williams, West Palm Beach, Florida; and Jane Kreusler-Walsh, West Palm Beach, Florida, for Henry E. Mogler et al.
PER CURIAM.
We have before us St. Mary's Hospital, Inc. v. Phillipe, 699 So.2d 1017 (Fla. 4th DCA 1997), and Franzen v. Mogler, 699 So.2d 1026 (Fla. 4th DCA 1997), which we have consolidated for review. These are medical malpractice wrongful death cases in which the defendants conceded liability. The parties voluntarily chose to use a statutorily created binding arbitration process as an alternative to litigation to provide a faster, more efficient, and less costly means of resolving the issue of damages. Under this process, the parties waived the right to a jury trial and agreed to have the damages restricted in accordance with the statutory process. Following arbitration, the plaintiffs in these cases were awarded various amounts of both economic and noneconomic damages.
Three issues are raised in this proceeding. First, the district court certified an unframed question of great public importance regarding whether the express provisions of section 766.212(2), Florida Statutes (1997), unconstitutionally infringe upon Florida Rule of Appellate Procedure 9.310. Section 766.212(2) limits the ability of a medical malpractice defendant to stay an arbitration award, whereas rule 9.310 expressly provides for the automatic stay of a money judgment upon the posting of a *963 sufficient bond. Phillipe, 699 So.2d at 1020.
Second, the district court certified the following question:

WHEN THE ALLEGED MEDICAL NEGLIGENCE RESULTS IN THE DEATH OF THE PATIENT, DOES THE CAP ON NONECONOMIC DAMAGES OF $250,000 PER INCIDENT IN A VOLUNTARY ARBITRATION UNDER § 766.207 APPLY TO EACH BENEFICIARY UNDER THE WRONGFUL DEATH ACT, OR DOES THE $250,000 CAP APPLY IN THE AGGREGATE TO INCLUDE ALL WRONGFUL DEATH ACT BENEFICIARIES?
Id. at 1026.
Third, in addition to these certified questions, we have been requested to address whether the elements of economic damages awardable in the statutorily created voluntary binding arbitration of a medical malpractice wrongful death claim are controlled by the provisions establishing the arbitration process set forth in the Medical Malpractice Act or by the provisions controlling the elements of damages set forth in the Wrongful Death Act. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

FACTS

St. Mary's Hospital, Inc. v. Phillipe
The facts of the first case are as follows. Juslin Phillipe died while giving birth to her daughter, Ecclesianne. Ecclesianne was born severely brain damaged. Charles Phillipe, Juslin's husband and the personal representative of her estate, brought a medical malpractice wrongful death action against St. Mary's Hospital on behalf of himself and the decedent's four surviving children.
The parties in this case chose to proceed under the statutory alternative dispute process for medical malpractice claims set forth in section 766.207, Florida Statutes (1997). St. Mary's conceded liability and the case proceeded under that arbitration process on the issue of damages. It is important to note that the independent personal injury action of the brain-damaged child, Ecclesianne, was not part of the arbitration process.
After a hearing, the arbitrators awarded the following damages: $250,000 in noneconomic damages to both Charles, the husband, and Ecclesianne, the daughter; $175,000 in noneconomic damages to each of the remaining children; $2,284,804 to the family in economic damages for loss of services; $943,000 in economic damages for loss of special services to Ecclesianne; $3,398 in funeral expenses; and $510,632 in attorneys' fees. The total amount of the arbitration award was $4,766,834.
St. Mary's appealed the award and filed a motion to stay the award pending review pursuant to section 766.212(2). That provision prohibits an arbitration panel or circuit court from staying an arbitration award, but it allows a district court of appeal to stay such an award if necessary to prevent manifest injustice. The motion to stay was denied by the district court, and the trial court entered a final judgment ratifying the arbitration award. St. Mary's appealed the final judgment and attempted to post a supersedeas bond in the trial court under rule 9.310 in an attempt to obtain an automatic stay from the execution of the judgment. The trial court declined to stay the execution and directed the sheriff to levy on St. Mary's assets. St. Mary's subsequently paid Phillipe over two million dollars, the amount of the judgment that had become due.
On appeal, St. Mary's argued that, because the limited stay provision under section 766.212(2) abrogates the automatic stay provision of rule 9.310, the statute unconstitutionally infringes on this Court's exclusive authority to regulate appellate practice and procedure. The district court disagreed, holding that section 766.212 "created a modified right to judicial review of arbitration awards" and "an equally substantive *964 right to payment of the award during review." Phillipe, 699 So.2d at 1019. The district court also held that the trial court properly refused to enter a stay under section 766.212(2) because it was not manifestly unjust to require St. Mary's to promptly pay the award. The district court certified to this Court the question of the constitutionality of section 766.212(2).
St. Mary's next argued that the arbitrators' total award of noneconomic damages in the amount of $1,025,000 exceeded the $250,000 cap set forth in section 766.207(7)(b). That provision provides that "[n]on-economic damages shall be limited to a maximum of $250,000 per incident." St. Mary's asserted that the term "per incident" reflected that the limit applies in the aggregate to all claimants, rather than separately to each wrongful death beneficiary. The district court agreed with St. Mary's. The court concluded that the plain language of the statute indicates that "there can be no more than $250,000 in non-economic damages awarded by the arbitrators under section 766.207, no matter how many different people may have a direct benefit in the award, or the source of their entitlement to share in the award." Id. at 1025. Accordingly, the district court reversed the arbitration award of noneconomic damages, remanded for the reduction of such damages to $250,000 in the aggregate, and certified the second question for our review.
In its final claim, St. Mary's argued that the award of economic damages for the decedent's loss of earning capacity was improper because such damages are not available under the Wrongful Death Act. The district court disagreed, holding that the elements of economic damages available in a voluntary binding arbitration of a medical malpractice claim are controlled by the Medical Malpractice Act rather than the Wrongful Death Act and that sections 766.202(3) and 766.207(7)(a) of the Medical Malpractice Act permit the award for loss of earning capacity.

Franzen v. Mogler
Michael Mogler, a minor, died following treatment from Dr. Dirk Franzen. Henry and Donna Mogler, the parents of Michael Mogler, brought a medical malpractice wrongful death claim on behalf of themselves and their son's estate against Franzen. As in Phillipe, the parties voluntarily chose to proceed under the voluntary statutory arbitration process. Franzen conceded liability, and the issue of damages proceeded to arbitration. After a hearing, the arbitrators awarded the following damages to Henry Mogler: $250,000 in past and future noneconomic damages; $9,125 for past medical expenses; $29,750 for future medical expenses; and $7,950 for past and future loss of services. The arbitrators awarded the following damages to Donna Mogler: $250,000 in past and future noneconomic damages; $46,593 for past medical expenses; $46,000 for future medical expenses; $57,636 for past wage loss; $304,189 for future wage loss; and $7,950 for past and future loss of services. The Estate of Michael Mogler was awarded the following damages: $3,078 for funeral expenses; $5,084 for medical expenses; and $388,272 for lost wages. The arbitrators also awarded attorneys' fees and costs in the amount of $210,844. The total amount of the arbitration award was $1,616,471. Following its decision in Phillipe, the district court reversed the award of noneconomic damages and affirmed the award of economic damages.

ISSUE I. STAY PENDING REVIEW OF MEDICAL MALPRACTICE ARBITRATION AWARD
As noted above, this case presents three issues. The first issue involves the certified question of whether the express provisions in section 766.212(2), which limit the ability of a medical malpractice defendant to stay an arbitration award, unconstitutionally infringe upon rule 9.310, which expressly directs an automatic stay of a money judgment upon the posting of a sufficient bond. St. Mary's contends that *965 the limited ability to stay the execution of an arbitration award under section 766.212(2) is unconstitutional because it encroaches on this Court's rule-making authority given the right to an automatic stay of a money judgment under rule 9.310(b). St. Mary's alternatively argues that the district court erred in failing to stay the arbitration award under the provisions of section 766.212(2) on the grounds that the failure to grant a stay would result in a manifest injustice.
The Medical Malpractice Act establishes a scheme for the payment of an arbitration award. To that end, sections 766.211 and 766.212 provide as follows:
766.211. Payment of arbitration award; interest.
(1) Within 20 days after the determination of damages by the arbitration panel pursuant to s. 766.207, the defendant shall:
(a) Pay the arbitration award, including interest at the legal rate, to the claimant; or
(b) Submit any dispute among multiple defendants to arbitration pursuant to s. 766.208.
(2) Commencing 90 days after the award rendered in the arbitration procedure pursuant to s. 766.207, such award shall begin to accrue interest at the rate of 18 percent per year.
766.212. Appeal of arbitration awards and allocations of financial responsibility. 
(1) An arbitration award and an allocation of financial responsibility are final agency action for purposes of s. 120.68. Any appeal shall be taken to the district court of appeal for the district in which the arbitration took place, shall be limited to review of the record, and shall otherwise proceed in accordance with s. 120.68. The amount of an arbitration award or an order allocating financial responsibility, the evidence in support of either, and the procedure by which either is determined are subject to judicial scrutiny only in a proceeding instituted pursuant to this subsection.
(2) No appeal shall operate to stay an arbitration award; nor shall any arbitration panel, arbitration panel member, or circuit court stay an arbitration award. The district court of appeal may order a stay to prevent manifest injustice, but no court shall abrogate the provisions of s. 766.211(2).
(3) Any party to an arbitration proceeding may enforce an arbitration award or an allocation of financial responsibility by filing a petition in the circuit court for the circuit in which the arbitration took place. A petition may not be granted unless the time for appeal has expired. If an appeal has been taken, a petition may not be granted with respect to an arbitration award or an allocation of financial responsibility that has been stayed.
(4) If the petitioner establishes the authenticity of the arbitration award or of the allocation of financial responsibility, shows that the time for appeal has expired, and demonstrates that no stay is in place, the court shall enter such orders and judgments as are required to carry out the terms of the arbitration award or allocation of financial responsibility. Such orders are enforceable by the contempt powers of the court; and execution will issue, upon the request of a party, for such judgments.
As set forth in section 766.211(1), the defendant must pay the arbitration award to the claimant within twenty days of the final award of the arbitration panel. Under section 766.211(2), the award will accrue interest at a rate of eighteen percent beginning ninety days following the rendition of the award. Section 766.212(2) states that the filing of an appeal shall not stay the award and that neither the arbitrators nor the circuit court shall stay an award. Under this statute, however, only a district court may stay an award to prevent manifest injustice. Section 766.212(4) provides that if the petitioner *966 establishes the authenticity of the award, shows that the time for appeal has expired, and demonstrates that no stay is in place, the trial court can enter an order or judgment necessary to carry out the terms of the award.
In contrast to this statute, rule 9.310(a) provides the trial court, upon proper motion, with the discretion to stay an order pending review. Rule 9.310 provides:
Rule 9.310. Stay Pending Review
(a) Application. Except as provided by general law and in subdivision (b) of this rule, a party seeking to stay a final or non-final order pending review shall file a motion in the lower tribunal, which shall have continuing jurisdiction, in its discretion, to grant, modify, or deny such relief. A stay pending review may be conditioned on the posting of a good and sufficient bond, other conditions, or both.
(b) Exceptions.
(1) Money Judgments. If the order is a judgment solely for the payment of money, a party may obtain an automatic stay of execution pending review, without the necessity of a motion or order, by posting a good and sufficient bond equal to the principal amount of the judgment plus twice the statutory rate of interest on judgments on the total amount on which the party has an obligation to pay interest. Multiple parties having common liability may file a single bond satisfying the above criteria.
(2) Public Bodies; Public Officers. The timely filing of a notice shall automatically operate as a stay pending review, except in criminal cases, when the state, any public officer in an official capacity, board, commission, or other public body seeks review; provided that an automatic stay shall exist for 48 hours after the filing of the notice of appeal for public records and public meeting cases. On motion, the lower tribunal or the court may extend a stay, impose any lawful conditions, or vacate the stay.
(c) Bond.
(1) Defined. A good and sufficient bond is a bond with a principal and a surety company authorized to do business in the State of Florida, or cash deposited in the circuit court clerk's office. The lower tribunal shall have continuing jurisdiction to determine the actual sufficiency of any such bond.
(2) Conditions. The conditions of a bond shall include a condition to pay or comply with the order in full, including costs; interest; fees; and damages for delay, use, detention, and depreciation of property, if the review is dismissed or order affirmed; and may include such other conditions as may be required by the lower tribunal.
(d) Judgment Against a Surety. A surety on a bond conditioning a stay submits to the jurisdiction of the lower tribunal and the court. The liability of the surety on such bond may be enforced by the lower tribunal or the court, after motion and notice, without the necessity of an independent action.
(e) Duration. A stay entered by a lower tribunal shall remain in effect during the pendency of all review proceedings in Florida courts until a mandate issues, or unless otherwise modified or vacated.
(f) Review. Review of orders entered by lower tribunals under this rule shall be by the court on motion.
This rule gives the trial court discretion to enter a stay subject to exceptions "in subdivision (b)" and "by general law." (Emphasis added.) Subdivision (b) of rule 9.310 eliminates the trial court's discretion to enter a stay by providing for the automatic stay of a money judgment upon the posting of a sufficient bond. On the other hand, as noted above, section 766.212(2) eliminates the trial court's discretion to enter a stay by providing that a stay of an arbitration award may be entered only by a district court to avoid manifest injustice. Thus, the limited ability to stay an arbitration award under section 766.212(2) is an *967 exception to the automatic stay provision of rule 9.310(b). That exception is consistent with the overall purpose of the arbitration process, which, as noted in more detail in the next issue, is intended to expedite the payment of awards to claimants.
The parties agreed to participate in this voluntary arbitration process. When a party voluntarily agrees to enter binding arbitration under this statutory alternative process, the party has bound itself to the statutory terms of that process. Accordingly, in this instance, when the parties agreed to participate in the arbitration process of the Medical Malpractice Act, they also agreed to the limited stay and review procedures set forth in that Act. Under these circumstances, we agree with the district court's conclusion that section 766.212(2) does not unconstitutionally infringe upon this Court's rule-making authority.
We also agree with the district court's decision that the execution of the arbitration award does not result in manifest injustice. St. Mary's has demonstrated that it was promptly required to honor the award. However, any claim that St. Mary's may not be able to recover the executed award from the claimants following a successful appeal is merely speculative without specific allegations as to why recovery would not be possible.

ISSUE II. MEANING OF THE CLAUSE "NONECONOMIC DAMAGES SHALL BE LIMITED TO A MAXIMUM OF $250,000 PER INCIDENT"
The second issue involves whether the $250,000 "per incident" limitation of noneconomic damages in the arbitration provisions of the Medical Malpractice Act limits the total recovery of all claimants in the aggregate to $250,000 or limits the recovery of each claimant individually to $250,000.
Section 766.207(7)(b) is the provision setting forth the $250,000 noneconomic damages cap. That provision provides:
Noneconomic damages shall be limited to a maximum of $250,000 per incident, and shall be calculated on a percentage basis with respect to capacity to enjoy life, so that a finding that the claimant's injuries resulted in a 50-percent reduction in his or her capacity to enjoy life would warrant an award of not more than $125,000 noneconomic damages.
Section 766.207(7)(b) (emphasis added). The claimants argue that the $250,000 per incident cap on noneconomic damages limits the damages per individual claimant. They also assert that the arbitration provisions of the Medical Malpractice Act as interpreted by the district court violate their constitutional rights to equal protection under the law.
St. Mary's contends that section 766.207(7)(b) is clear and unambiguous and that a plain meaning construction of the statute indicates that the Legislature intended to limit noneconomic damages to $250,000 per incident in the aggregate. Additionally, Franzen asserts that the constitutional challenge of the cap on noneconomic damages should not be entertained because this Court has already determined that the Medical Malpractice Act's limitations were constitutional. See University of Miami v. Echarte, 618 So.2d 189, 196 (Fla.1993). For the reasons provided below, we reject St. Mary's and Franzen's arguments.
It is a cardinal rule of statutory construction that a statute must be construed in its entirety and as a whole. State ex rel. Triay v. Burr, 79 Fla. 290, 84 So. 61 (1920); see also State v. Gale Distributors, Inc., 349 So.2d 150 (Fla.1977) (finding that the entire statute must be considered, and effect must be given to every part of the provision under construction); Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist., 274 So.2d 522 (Fla.1973) (holding that legislative intent should be gathered from consideration *968 of the statute as a whole rather than from any one part thereof). An examination of the entire statute demonstrates that section 766.207(7)(b) is neither clear nor unambiguous.
Section 766.207(7)(b) does state that "noneconomic damages shall be limited to a maximum of $250,000 per incident"; however, within that same provision the statute goes on to describe how these damages shall be calculated, and in so doing refers to "claimant" in the singular. See § 766.207(7)(b), Fla. Stat. (1999). Likewise, section 766.207(7)(k) states that:
Any offer by a claimant to arbitrate must be made to each defendant against whom the claimant has made a claim. Any offer by a defendant to arbitrate must be made to each claimant who has joined in the notice of intent to initiate litigation, as provided in s. 766.106. A defendant who rejects a claimant's offer to arbitrate shall be subject to the provisions of s. 766.209(3). A claimant who rejects a defendants offer to arbitrate shall be subject to the provisions of s. 766.209(4).
(Emphasis added.)
For the purposes of this statute, "claimant" is clearly defined as "any person who has a cause of action arising from medical negligence." § 766.202(1), Fla. Stat. (1999). See also Bombalier v. Lifemark Hosp. of Florida, 661 So.2d 849 (Fla. 3d DCA 1995)(finding that for purposes of a wrongful death action the term "claimant" embraces more than the patient who directly experienced the departure from the standard of care by the health care provider), review denied, 666 So.2d 901 (Fla.1996).
When referring to multiple parties, the statute is also perfectly clear. For example, section 766.207(4), which sets forth the composition of the arbitration panel, states that
In the event of multiple plaintiffs or multiple defendants, the arbitrator selected by the side with multiple parties shall be the choice of those parties. If the multiple parties cannot reach agreement as to their arbitrator, each of the multiple parties shall submit a nominee....
(Emphasis added.)
Furthermore, where the Legislature has intended to limit claimants' damages in the aggregate in other contexts, they have done so explicitly. For example, in section 768.28(5), a provision of Florida's Wrongful Death Act which limits damage claims against the state, the Legislature limited to $200,000 the State's liability for damages arising out of the same incident. Section 768.28(5) states in pertinent part:
Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivision arising out of the same incident or occurrence, exceeds the sum of $200,000.
§ 768.28(5), Fla. Stat. (1999) (emphasis added).
Therefore, we find that section 766.207(7)(b) is neither clear nor unambiguous. Where there is ambiguity and uncertainty in the words employed in a statute, we must look to the legislative intent for guidance. See Payne v. Payne, 82 Fla. 219, 89 So. 538 (1921).
Before the Medical Malpractice Act was implemented, the Legislature established an Academic Task Force for Review of the Insurance and Tort Systems. The Legislature directed the Task Force to study the problems associated with liability insurance. Based upon the Task Force's findings and recommendations, in 1988 the Legislature enacted the Medical Malpractice Act, which contains the voluntary arbitration process at issue in these cases.
In adopting the Act, the Legislature adopted the Task Force's recommendations and findings in chapter 88-1, Laws of *969 Florida,[1] and section 766.201, Florida Statutes (Supp.1988).[2] Section 766.201(1) expressly *970 sets forth the Legislature's intent to provide a mechanism for the prompt resolution of medical malpractice claims through mandatory presuit investigation and voluntary binding arbitration of damages. Likewise, section 766.201(2)(b) reveals the Legislature's intent to provide substantial incentives to claimants and defendants to voluntarily submit their cases to binding arbitration. In our opinion in Echarte, we explained the incentives for claimants to voluntarily submit to such a process, stating:
The claimant benefits from the requirement that a defendant quickly determine the merit of any defenses and the extent of its liability. The claimant also saves the costs of attorney and expert witness fees which would be required to prove liability. Further, a claimant who accepts a defendant's offer to have damages determined by an arbitration panel receives the additional benefits of: 1) the relaxed evidentiary standard for arbitration proceedings as set out by section 120.58, Florida Statutes (1989); 2) joint and several liability of multiple defendants in arbitration; 3) prompt payment of damages after the determination by the arbitration panel; 4) interest penalties against the defendant for failure to promptly pay the arbitration award; and 5) limited appellate review of the arbitration award requiring a showing of "manifest injustice."
618 So.2d at 194. On the other hand, the most significant incentive for defendants to concede liability and submit the issue of damages to arbitration is the $250,000 cap on noneconomic damages. This limitation provides liability insurers with the ability to improve the predictability of the outcome of claims for the purpose of loss planning in risk assessment for premium purposes.
This predictability can be obtained by interpreting section 766.207(7)(b) so that each claimant is fairly and reasonably compensated for his or her pain and suffering. Such an interpretation would provide increased predictability in the outcome of the claims as the insurers would no longer be contending with the possibility of exorbitant noneconomic damage awards but would have a fixed dollar amount ($250,000), which each claimant's award could not exceed. Moreover, this interpretation does more to promote early resolution of medical negligence claims, as it provides an equitable result which will in turn further encourage claimants to seek resolution through arbitration.
An analysis of the availability of noneconomic damages in other wrongful death contexts demonstrates that our ruling here is consistent with the principles of equity inherent in the distribution of noneconomic damages to survivors. For example, in National Railroad Passenger Corp. v. Ahmed, 653 So.2d 1055 (Fla. 4th DCA 1995), the First District Court of Appeal clearly states that in assessing noneconomic damages for surviving children, each child's loss must be considered separately.
Ahmed involved the injury and subsequent death of Jose Gresham caused by the derailment of an Amtrak train. Mr. Gresham's estate, six surviving adult children and one surviving stepchild filed suit against Amtrak, and the jury awarded each surviving adult child, including the stepchild, $400,000 for "the loss of parental companionship, instruction and guidance, and [for] the child's pain and suffering as a result of [Gresham's] injury and death." Amtrak, 653 So.2d at 1056. The district court approved that award and stated:
These seven children suffered losses as a result of the death of their father, and each deserves to be compensated. If the decedent had but one child, and the jury returned a verdict of $400, 000, the damages award may not appear as excessive *971 as $2.8 million seems to be at first glance.
653 So.2d at 1059 (emphasis added); see also and Snoozy v. United States Gypsum Co., 695 So.2d 767 (Fla. 3d DCA 1997) (holding that where a jury awarded the wife economic and noneconomic damages, but failed to award damages for decedent's minor children in a wrongful death action, the wife was entitled to a new trial to determine the children's damages); Alamo Rent-A-Car, Inc. v. Clay, 586 So.2d 394 (Fla. 3d DCA 1991) (finding that an award of $800,000 to each surviving child was not excessive).
Likewise, cases interpreting section 768.28, which waives Florida's sovereign immunity in tort actions, have held that the several claims of all persons entitled to recover for a wrongful death are separate and should be calculated individually. See State Dep't of Corrections v. Parker, 553 So.2d 289 (Fla. 4th DCA 1989) (finding that both the wife and the estate were separately injured by the death of the husband; therefore, the wife's action for loss of consortium was distinct from that of the estate and the $100,000 limit was for each claimant); State Dep't of Transp. v. Knowles, 388 So.2d 1045 (Fla. 2d DCA 1980) (holding that the limitation of section 768.28(5) does not apply to separate claims by different individuals in the same lawsuit), aff'd, 402 So.2d 1155 (Fla.1981); State Board of Regents v. Yant, 360 So.2d 99 (Fla. 1st DCA 1978) (holding that the mother's right of action for recovery was independent of the right of action of the child arising from the same incident).
These decisions clearly demonstrate that in order for the assessment of a survivor's noneconomic damages to be equitable, each survivor's loss must be independently determined. Moreover, the loss of a survivor is not diminished by the mere fact that there are multiple survivors. Differentiating between a single claimant and multiple claimants bears no rational relationship to the Legislature's stated goal of alleviating the financial crisis in the medical liability insurance industry.
Finally, were we to interpret the noneconomic damages cap to apply to all claimants in the aggregate, we conclude that such an interpretation would create equal protection concerns. Franzen correctly points out that this Court in Echarte addressed the constitutionality of sections 766.207 and 766.209; however, in that case we were not presented with the specific challenge that this case poses.[3] The instant case poses the question of how section 766.207(7)(b) relates to a circumstance where there is one medical malpractice incident and multiple claimants versus the situation where there is one medical malpractice incident and only a single claimant. Therefore, Echarte does not control our decision here.
It is well settled under federal and Florida law that all similarly situated persons are equal under the law and must be treated alike. See McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249, 251 (Fla.1987); Haber v. State, 396 So.2d 707 (Fla.1981). Moreover, without exception, all statutory classifications that treat one person or group differently than others must bear some reasonable relationship to a legitimate state objective and cannot be discriminatory, arbitrary, or oppressive. See Abdala v. World Omni Leasing, Inc., 583 So.2d 330, 333 (Fla.1991); In re Greenberg's Estate, 390 So.2d 40 (Fla.1980); Graham v. Ramani, 383 So.2d 634 (Fla. *972 1980); Department of Health & Rehabilitative Servs. v. Heffler, 382 So.2d 301 (Fla. 1980).
If we were to accept St. Mary's contention that the Legislature intended to limit noneconomic damages to $250,000 per incident in the aggregate, then the death of a wife who leaves only a surviving spouse to claim the $250,000 is not equal to the death of a wife who leaves a surviving spouse and four minor children, resulting in five claimants to divide $250,000. We fail to see how this classification bears any rational relationship to the Legislature's stated goal of alleviating the financial crisis in the medical liability industry. Such a categorization offends the fundamental notion of equal justice under the law and can only be described as purely arbitrary and unrelated to any state interest. See Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla. 1986).
Moreover, it is erroneous to claim that this defect can be overcome by the fact that arbitration is voluntary. Arbitration is not voluntary according to section 766.207(7)(k) because "a claimant who rejects a defendant's offer to arbitrate shall be subject to the provisions of section 766.209(4)," which limits the noneconomic damages to be awardable at trial to $350,000. Therefore, instead of five claimants having to divide $250,000 under the arbitration limitations, they are left to divide $350,000, which clearly has no effect on the equal protection concerns.
It is a fundamental rule of statutory construction that, if at all possible, a statute should be construed to be constitutional. See Van Bibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880, 883 (Fla.1983). In fact, this Court is bound "to resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994)(quoting State v. Elder, 382 So.2d 687, 690 (Fla.1980)). Therefore, we conclude that the cap on noneconomic damages applies to each claimant individually. Our holding on this issue is consistent with the federal and Florida Constitutions and honors the legislative intent of the Medical Malpractice Act.

ISSUE III. ECONOMIC DAMAGES
The final issue involves the question of whether the elements of economic damages awardable in the voluntary binding arbitration of a medical malpractice wrongful death claim are controlled by the Medical Malpractice Act or the Wrongful Death Act. St. Mary's, Franzen, and the Florida Defense Lawyers Association argue that when medical negligence results in death, rather than personal injury, the elements of damages recoverable are limited by section 768.21, Florida Statutes (1995), of the Wrongful Death Act. They also contend that the arbitration provisions of the Medical Malpractice Act merely control the amount, rather than the type, of recoverable economic damages. They maintain that the Medical Malpractice Act provides for the full range of economic damages when the parties agree to arbitrate.
The argument arises in both cases based on the following factual circumstances. In Phillipe, the arbitrators awarded a total of $2,284,804 for economic damages to the Phillipe family. Of that amount, $1,671,424 was for loss of services and $613,380 was for loss of earning capacity from the date of Juslin Phillipe's death. St. Mary's argues that the award for loss of earning capacity was improper because this element of damages is not available under the Wrongful Death Act.
In Franzen, the arbitrators awarded a total of $905,637 for economic damages. This award included amounts for Donna and Henry Mogler's past and future medical expenses and past and future loss of services. Donna Mogler was also awarded past and future wage loss. The estate *973 was awarded medical expenses, funeral expenses, and wage loss of the minor decedent. Franzen argues that the only elements of economic damages available under the Wrongful Death Act to the Moglers are the medical and funeral bills to the estate, which total $8,172. The Florida Defense Lawyers Association argues that the only elements of economic damages available to the Moglers are the survivors' loss of services and the medical and funeral expenses incurred by the estate, which total $24,072.
Three provisions of the Medical Malpractice Act discuss economic damages. Section 766.202(3) defines "economic damages" as "including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity." Section 766.207(7)(a) provides that arbitration shall be undertaken with the understanding that "[n]et economic damages shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments." This economic damages provision is replicated under section 766.209, which applies when a claimant rejects an offer to arbitrate.
Unlike the Medical Malpractice Act, the Wrongful Death Act does not provide claimants with such a full range of economic damages. Under section 768.21(1) of the Wrongful Death Act, each survivor may recover the value of lost support and services from the date of the decedent's injury, and under section 768.21(6), the estate may recover the decedent's loss of earnings, loss of prospective net accumulations, and medical and funeral expenses.
We conclude that the arbitration provisions of the Medical Malpractice Act expressly specify the elements of all of the damages available when the parties agree to binding arbitration, regardless of whether the medical malpractice action involves a wrongful death. The plain language of sections 766.202(3) and 766.207(7)(a) indicates that the full range of economic damages is available to claimants as an incentive to forego a jury trial on damages and proceed to arbitration. The legislative intent of the Medical Malpractice Act also indicates that the arbitration provisions were enacted to address soaring noneconomic damage awards, rather than the more predictable economic damage awards. See § 766.201. If the Legislature intended for the Wrongful Death Act to control the elements of damages available in a medical malpractice arbitration, it could have specifically provided for the application of the provisions of that Act in the Medical Malpractice Act. It has not done so.

CONCLUSION
In conclusion, we reject St. Mary's contention that section 766.212(2), which limits the ability of a medical malpractice defendant to stay an arbitration award, unconstitutionally infringes upon the automatic stay provision of rule 9.310. Second, we answer the district court's express certified question by holding that the $250,000 cap on noneconomic damages applies to each claimant individually. Finally, we reject St. Mary's and Franzen's contention that the elements of economic damages available in the voluntary binding arbitration process are limited by the Wrongful Death Act.
Accordingly, we approve in part and quash in part the district court's decisions in Phillipe and Franzen and remand for proceedings consistent with this opinion.
It is so ordered.
HARDING, C.J., and SHAW, WELLS and LEWIS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which QUINCE, J., concurs.
PARIENTE, J., recused.
*974 ANSTEAD, J., concurring in part and dissenting in part.
I would approve the decision of the Fourth District in full, including its interpretation of the legislative cap on noneconomic damages as a maximum of $250,000 per incident of medical malpractice. This is the plain meaning of the words used by the Legislature and is clearly the meaning contemplated by all of the justices of this Court in its four-to-two vote upholding the statutory scheme against a barrage of constitutional attacks in University of Miami v. Echarte, 618 So.2d 189 (Fla.1993). Indeed, today's interpretation actually posits a scheme less restrictive than virtually all assumed was in place when the debate that culminated in our Echarte decision was in full bloom. The per-incident cap was a principal focus of the debate, and its unambiguous meaning was advanced as a major reason why the statutory scheme could not pass constitutional muster. Accordingly, while I have serious concerns about the soundness of the Echarte analysis in view of the drastic limitations imposed by the statutory scheme on a citizen's access to the courts, I do not believe today's decision can be reconciled with our prior treatment of the statute.
QUINCE, J., concurs.
NOTES
[1] The preamble to chapter 88-1, Laws of Florida, provides:

WHEREAS, the Legislature finds that there is in Florida a financial crisis in the medical liability insurance industry, and
WHEREAS, it is the sense of the Legislature that if the present crisis is not abated, many persons who are subject to civil actions will be unable to purchase liability insurance, and many injured persons will therefore be unable to recover damages for either their economic losses or their noneconomic losses, and
WHEREAS, the people of Florida are concerned with the increased cost of litigation and the need for a review of the tort and insurance laws, and
WHEREAS, the Legislature believes that, in general, the cost of medical liability insurance is excessive and injurious to the people of Florida and must be reduced, and
WHEREAS, the Legislature finds that there are certain elements of damage presently recoverable that have no monetary value, except on a purely arbitrary basis, while other elements of damage are either easily measured on a monetary basis or reflect ultimate monetary loss, and
WHEREAS, the Legislature desires to provide a rational basis for determining damages for noneconomic losses which may be awarded in certain civil actions, recognizing that such noneconomic losses should be fairly compensated and that the interests of the injured party should be balanced against the interests of society as a whole, in that the burden of compensating for such losses is ultimately borne by all persons, rather than by the tortfeasor alone, and
WHEREAS, the Legislature created the Academic Task Force for Review of the Insurance and Tort Systems which has studied the medical malpractice problems currently existing in the State of Florida, and
WHEREAS, the Legislature has reviewed the findings and recommendations of the Academic Task Force relating to medical malpractice, and
WHEREAS, the Legislature finds that the Academic Task Force has established that a medical malpractice crisis exists in the State of Florida which can be alleviated by the adoption of comprehensive legislatively enacted reforms, and
WHEREAS, the magnitude of this compelling social problem demands immediate and dramatic legislative action, NOW, THEREFORE, ....
(Emphasis added).
[2] Section 766.201 provides:

(1) The Legislature makes the following findings:
(a) Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased medical care costs for most patients and functional unavailability of malpractice insurance for some physicians.
(b) The primary cause of increased medical malpractice liability insurance premiums has been the substantial increase in loss payments to claimants caused by tremendous increases in the amounts of paid claims.
(c) The average cost of defending a medical malpractice claim has escalated in the past decade to the point where it has become imperative to control such cost in the interests of the public need for quality medical services.
(d) The high cost of medical malpractice claims in the state can be substantially alleviated by requiring early determination of the merit of claims, by providing for early arbitration of claims, thereby reducing delay and attorney's fees, and by imposing reasonable limitations on damages, while preserving the right of either party to have its case heard by a jury.
(e) The recovery of 100 percent of economic losses constitutes overcompensation because such recovery fails to recognize that such awards are not subject to taxes on economic damages.
(2) It is the intent of the Legislature to provide a plan for prompt resolution of medical negligence claims. Such plan shall consist of two separate components, presuit investigation and arbitration. Presuit investigation shall be mandatory and shall apply to all medical negligence claims and defenses. Arbitration shall be voluntary and shall be available except as specified.
(a) Presuit investigation shall include:
1. Verifiable requirements that reasonable investigation precede both malpractice claims and defenses in order to eliminate frivolous claims and defenses.
2. Medical corroboration procedures.
(b) Arbitration shall provide:
1. Substantial incentives for both claimants and defendants to submit their cases to binding arbitration, thus reducing attorney's fees, litigation costs, and delay.
2. A conditional limitation on noneconomic damages where the defendant concedes willingness to pay economic damages and reasonable attorney's fees.
3. Limitations on the noneconomic damages components of large awards to provide increased predictability of outcome of the claims resolution process for insurer anticipated losses planning, and to facilitate early resolution of medical negligence claims.
[3] In Echarte, the issue presented was whether sections 766.207 and 766.209 violate a claimant's right of access to the courts. Echarte, 618 So.2d at 190. While this Court did consider other constitutional challenges and held that the statutes do not violate equal protection guarantees, the equal protection argument addressed in that case concerned whether the cap on noneconomic damages created two classifications of medical malpractice victims-those with insignificant injuries who are compensated in full, and those with serious injuries who are deprived of full compensation.